THE PEOPLE, for use of Macon County,

*v.*

WILLIAM W. FOSTER *et al.*

*Filed at Springfield January 18, 1890.*

1. SURETY—*extent of liability—strict construction.* A surety is not to be held liable beyond the terms and letter of his contract. Such liability is *strictissimi juris*, and is not to be extended by construction or implication.

2. OFFICIAL BONDS—*liability of sureties—its extent—as, in case of a sheriff's bond.* The surety on an official bond is not liable for any act of his principal not done by virtue of authority given him by law, or under color of such authority. So the surety on a sheriff's bond is not liable to the county for moneys paid to bailiffs on the certification by the sheriff of their bills for services, however false, that officer having no authority to certify to bills of others.

3. And, generally, the sureties on a sheriff's bond are liable only for the acts of their principal during the term of his office, or while he is exercising the functions of his office pursuant to law.

4. COUNTY OFFICERS — *compensation of sheriff—limited to fees and emoluments.* The compensation of the sheriff shall be paid, if at all, out of the fees and emoluments of his office. No allowance can be made therefor, by order of the county board, out of the treasury, unless such officer has, prior thereto, made payments into the county treasury of

fees and emoluments of his office, and not then in excess of such amounts so paid in, or when there are fees earned in criminal cases where the defendants have been acquitted or otherwise legally discharged.

5. SAME—*in what emoluments may consist—in the case of a sheriff— taking prisoners to the penitentiary—attendance upon courts, etc.* The sheriff, in his semi-annual reports, is required to charge himself with all fees and emoluments of the office received by him from any and all sources. The money paid him by the State for conveying prisoners to the penitentiary is an emolument of his office. He must also account for moneys allowed and paid him by the county for his *per diem* for attendance on the courts, or compensation from any other source for any service he, as sheriff, is required to perform.

6. If the sum paid by the State for taking convicts to the penitentiary is necessarily expended in the performance of the service, the sheriff and his sureties will not be liable therefor. It is the duty of the board to allow the sheriff all necessary and legitimate expenses incurred by him in conveying convicts, and he will be chargeable only for the residue of the sum paid by the State.

7. SAME—*reports to county board—at what times to be made.* The statute (chap. 53, sec. 51,) makes it the duty of officers in counties under the township system, who are paid wholly or in part in fees, to make report to the chairman of the. county board in June and December of each year. On the coming in of such reports, if the officer has money remaining in his hands above the sum allowed him for compensation, etc., he is required to pay the same into the treasury.. There is nothing in the statute, however, prohibiting the making of reports at other times, or to any meeting of the board, or making it unlawful for an officer, at any time, to pay money into the county treasury.

8. SAME—*report of fees to county board—requisites of the report.* The statute (chap. 53, sec. 51,) makes it the duty of the sheriff, in addition to keeping in a book in his office "a full, true and minute account" of all fees and emoluments of his office earned, and of all payments received on account thereof, etc., to make a return on the first days of June and December of each year, to the chairman of the board of supervisors, which shall show the gross amount of the earnings of his office, and the total amount of receipts on account thereof, "of every name and character." Such report must be verified, by oath, as being a just and true account of all moneys, articles of property or "other consideration" directly or indirectly received by or paid to such officer. The object of this requirement is to apprise the county board of the facts, and thereby enable it to settle with the officer. While the board may not be bound by such report, it may settle by it.

9. SAME—*as to what fees shall be reported—form of the report—of fees chargeable to the county, etc.* The fees of the sheriff for receiving and

32—133 ILL.

discharging prisoners from the jail, when not paid by the latter, and fees in criminal cases when no conviction is had, and for serving *venires*, are proper charges against the county, and it is the duty of the county board to audit and allow such fees, and draw an order on the treasurer therefor in favor of the officer. It is the duty of the sheriff, in his next report, to charge himself with the money so received, and apply the same, as far as necessary, upon his compensation as fixed by the board, or in payment of expenses allowed by the board, and if any excess remains in his hands, to pay the same into the county treasury. There can be no distinction between fees earned by the officer chargeable to the county, and those chargeable to individuals,—they must in each instance be paid to the officer, and he must account in the same manner for them.

10.  While it is the duty of the sheriff formally to report all fees earned, yet a mere informality in his report, as, placing fees for receiving and discharging prisoners under the head of "Ins and outs," is unimportant, if the county board allows and pays them, and the officer accounts to the county for the same.

11.  Section 19, chapter 53, of the Revised Statutes, provides for payment out of the county treasury, of the fees of the sheriff, where the defendant in a criminal prosecution has been acquitted or otherwise legally discharged ; but the statute seems to require that such payment out of the treasury shall apply only upon the compensation allowed the sheriff for the year in which such fees are earned.

12.  SAME—*failure to make report of fees collected—and as to money improperly paid by the county board to the officer.* If a sheriff, in neglect of his duty to report to the chairman of the county board the fees actually collected by him, suppresses the fact that he had collected certain fees and emoluments of the office, and the county board pays him a reported deficit in his compensation as sheriff, out of the county treasury, upon the assumption that it might lawfully do so by reason of the earned fees of the sheriff in criminal cases where the defendant has been acquitted or otherwise legally discharged, an action will lie in behalf of the county to collect the money so retained and unreported by him, or for money paid by the county to him under a mistake of fact to make up the deficit.

13.  SAME—*compensation, clerk hire, etc.—settlement with the county board.* The county board is the agent of the county, and is charged by law with the control and management of its fiscal concerns, and with the duty of carefully examining and auditing every report of every county officer, made to it, and of determining the balances for or against the county, and also to determine the state of account after the allowance of "such expenses as said board may approve and allow," etc. The amount fixed by the county board "for necessary clerk hire, stationery, fuel, lights," etc., to a county officer, remains under the control

of the board, and may be changed at any time when, in its judgment, the necessity therefor exists.

14. JAILER—*of his appointment and compensation—payment of the latter by the county.* While the sheriff is *ex officio* keeper of the jail, and the burden of that duty is cast by law on him, it is entirely competent for the county board to provide for and pay all such assistants as in its discretion may in any emergency be demanded. When the sheriff appoints a jailer, no right of action accrues to the person thus appointed against the county for his services, yet when the county voluntarily pays such assistant, no recovery can be had from the sheriff therefor by the county.

15. If, in the exercise of a reasonable discretion, for any cause satisfactory to the county board, additional guards or assistants for the sheriff shall be found necessary, there is no provision of law or principle of public policy that will prevent such board from making a reasonable allowance therefor from the county treasury. And if such board pays an assistant jailer upon an account rendered by the sheriff, there will be no liability of the sheriff and his sureties for the amount so voluntarily paid.

16. ACTIONS—*moneys voluntarily paid—or paid under mistake of law —and herein, of moneys paid by the county board on settlement with the sheriff.* As between individuals, when money is voluntarily paid under a mistake as to the law, and under a claim of right, and without any fraud to induce the same, it can not be recovered back.

17. One of the breaches assigned upon a sheriff's bond, counted for certain moneys coming to the officer's hands during his term of office, belonging to the county, being fees earned by former sheriffs of that county. The defendants, by one of their pleas, denied that said moneys came to the hands of the sheriff during his term of office, and averred that they were voluntarily paid by the county board of the county to the sheriff after the expiration of his term of office : *Held,* that the plea was a good plea.

18. Where the county board, acting within the general scope of its authority, and with knowledge of the facts, settles with a county officer, who is guilty of no fraud, concealment or misrepresentation of fact inducing its action, and pays from the county treasury the amount found due to such officer upon auditing and examining the officer's report, it will be treated as a voluntary payment of money, and no action will lie against the sureties on the officer's bond, to recover the same back.

19. One of the breaches assigned in a declaration on a sheriff's bond showed simply that the sheriff presented reports to the county board, showing that the fees collected, and allowances therefor made, did not equal the amount of his compensation for the time stated in his re-

ports, and a demand by the sheriff that the county pay him the deficiency claimed, and that the board paid him out of the county treasury. No fraud was alleged, nor was it shown that the several reports were untrue in any respect: *Held*, that the breach showed a voluntary payment by the board, which, at the most, was a mistake of law, only, and showed no ground of action.

20. Pleading—*breaches on official bonds.* While it is true, generally speaking, that in the assignment of breaches upon official bonds such general assignment will be sufficient as will put the party upon notice of what he is called upon to defend against, yet the declaration must not only state the facts relied on as constituting a breach, distinctly, but there must be such allegations, also, as will effectually exclude any other conclusion than that a breach of the condition has taken·place.

21. Same—*plea—must answer all it professes to answer.* In an action by a county against a sheriff on his bond, the defendants pleaded in bar of the whole action, that the sheriff did not, during his term of office, receive of fees, etc., a sum equal to the amount of his fixed compensation for said term. The plaintiff sought to recover on several grounds, one of which was, that the sheriff, by failing to report all the fees and emoluments received, drew from the county treasury funds he was not entitled to : *Held*, that the plea was bad in this, that it attempted to answer the whole breach and failed to do so.

22. Same—*plea presenting a conclusion of law.* To a declaration in a suit on a sheriff's bond, for the use of a county, for failure to account for fees, etc., the defendants pleaded that they were not liable, because the fees paid the sheriff by the county board for attendance upon the courts were not such fees as could be used for his personal compensation, etc. Defendants also pleaded another plea, admitting the sheriff received $1256 from the State for carrying convicts, but denied that he was bound by law to report the same : *Held*, that both pleas were bad, as presenting conclusions of law instead of issuable facts.

23. Bailiffs—*appointment and compensation.* The statute giving a *per diem* for constables who may be required to attend upon courts of record, to be paid by the county, would seem to be intended to supply the bailiffs necessary for the transaction of the business of the courts. In practice, the presiding judge certifies to the number of bailiffs required, and their attendance; but whether this practice is proper or not, the sheriff, by virtue of his office, is neither required nor authorized to certify to their accounts.

Appeal from the Appellate Court for the Third District ;— heard in that court on appeal from the Circuit Court of Macon county; the Hon. C. B. Smith, Judge, presiding.

Mr. E. P. VAIL, and Mr. W. C. OUTEN, for the appellant:

A county is not estopped by the board passing and approving an account containing illegal fees. *Cumberland County* v. *Edwards,* 76 Ill. 544.

Counties are involuntary political or civil divisions of the State, to aid administration, etc. The statutes confer all the power they possess, prescribe all duties and impose all liabilities to which they are subject. *Fayette County* v. *Jennings,* 5 Bradw. 614.

The county board is powerless to pay a balance due an officer. Compensation and expenses can be paid out of fees collected, only,—not out of any other fund. *Hamilton County* v. *Buck,* 8 Bradw. 248.

Revenues of a county are not property of a county. *People* v. *Power,* 25 Ill. 187; *Sangamon County* v. *Springfield,* 63 id. 66; *Harris* v. *Supervisors,* 105 id. 445.

Where a county board allowed part of a claim, this could not be construed as an acknowledgment of liability on the part of the county for such services. *Peoria County* v. *Roche,* 65 Ill. 77.

A board, under the statute to audit, does not possess judicial powers, but simply those of agency. Its settlement may be opened, etc. *LaSalle County* v. *Reynolds,* 49 Ill. 186; *Kinney* v. *People,* 3 Scam. 357.

If trustees of a town transcend their authority, their acts are not binding on the town or third persons. They have no power to give away funds of the town, etc. *Sherlock* v. *Winnetka,* 59 Ill. 389; *Petersburg* v. *Mappin,* 14 id. 195.

Bodies created for the discharge of public duties, and to aid in conducting the affairs of the county, have not been entrusted with the power to appropriate the property of the people to any but legal purposes. *Perry* v. *Kinnear,* 42 Ill. 160.

A promise to pay extra compensation to an officer is not binding. *Decatur* v. *Vermilion,* 77 Ill. 315.

As to when money paid may be recovered back, see Story on Agency, sec. 307; *Lovingston* v. *Trustees*, 99 Ill. 564; *School Directors* v. *Park*, 85 id. 338; *Village of Dwight* v. *Palmer*, 74 id. 295; *Jackson* v. *Norris*, 72 id. 364; *LaSalle County* v. *Simmons*, 5 Gilm. 513; *Devine* v. *Edwards*, 87 Ill. 177; Pollock on Contracts, 330; *Steele* v. *Williams*, 8 Exch. 625; *Trumbull* v. *Campbell*, 3 Gilm. 502; *Supervisors* v. *Knifer*, 37 Wis. 496; *Tyler* v. *Bailey*, 71 Ill. 34; *Taylor* v. *People*, 66 id. 322.

The sureties of the sheriff are liable for his acts in presenting his reports, etc., to the board. The condition of the bond is general, that if Foster "shall well and faithfully perform all the duties required of him," etc., as sheriff. That the sureties are liable, see *State* v. *Jennings*, 4 Ohio, 418; *People* v. *Lucas*, 93 N. Y. 585; *People* v. *Schuyler*, 4 id. 173; *Carmack* v. *Commonwealth*, 5 Binn. 184; *Horan* v. *People*, 10 Bradw. 21; *State* v. *Druly*, 3 Ind. 431; *Lowell* v. *Parker*, 10 Metc. 313; *Mosby* v. *Mosby*, 9 Gratt. 584; *Strunk* v. *Ochiltree*, 11 Iowa, 158; *Lammon* v. *Fensier*, 111 U. S. 17; *Van Pett* v. *Little*, 14 Cal. 196; *McElhany* v. *Gilleland*, 30 Ala. 183; *Mason* v. *Crabtree*, 71 id. 479; *People* v. *Robinson*, 89 Ill. 159; *People* v. *Core*, 85 id. 248; *Hughes* v. *People*, 82 id. 78; *Cullom* v. *Dolloff*, 94 id. 330; *Satterfield* v. *People*, 104 id. 448.

As to what are fees and emoluments with which the sheriff is chargeable, see *McWilliams* v. *Richland County*, 16 Bradw. 333; *Satterfield* v. *People*, 104 Ill. 448; *Hughes* v. *People*, 82 id. 78; *Daggett* v. *Ford County*, 99 id. 334.

The county is not liable to pay for an assistant jailer. *Kane* v. *Pierce*, 60 Ill. 481; *Seibert* v. *Logan County*, 63 id. 155; *Union County* v. *Patton*, id. 458; *Crawford County* v. *Spenney*, 21 id. 288; *Bryner* v. *Supervisors*, 24 id. 195; *Vise* v. *Hamilton County*, 19 id. 78; *Decatur* v. *Vermilion*, 77 id. 315.

A bailiff should be appointed by the court. His duties are to attend the courts, and perform such incidental duties as may be required. The sheriff has no business to appoint bailiffs. *McCann* v. *People*, 88 Ill. 103.

Messrs. JOHNS & RANDOLPH, Messrs. CREA & EWING, Messrs. MILLS BROS., and Messrs. BUNN & PARK, for the appellees:

The liability of sureties is *strictissimi juris,* and nothing can be taken against them by implication. *Reynolds* v. *Hall,* 1 Scam. 35; *People* v. *Moon,* 3 id. 123; *Field* v. *Rawlings,* 1 Gilm. 581; *Linch* v. *Linchfield,* 16 Bradw. 612; *McLain* v. *People,* 85 Ill. 205.

The doctrine of *estoppel in pais* is applicable to municipal corporations, but mere non-action of their officers to assert a right is not sufficient to work an estoppel,—there must be some act done influencing an action of another which renders it inequitable to permit the corporation to stultify itself. See *Logan County* v. *City of Lincoln,* 81 Ill. 156; *Railway Co.* v. *Joliet,* 79 id. 25; *Lee* v. *Town of Mound Station,* 118 id. 305; *Martel* v. *East St. Louis,* 94 id. 67; *Petersburg* v. *Mappin,* 14 id. 193; *County of Piatt* v. *Goodell,* 97 id. 84; *Sexton* v. *Chicago,* 107 id. 323; *Railway Co.* v. *People,* 91 id. 251.

The amount allowed by the county board to a sheriff for necessary clerk hire, stationery, fuel, lights, etc., may be changed at any time, as necessity demands. *Cullom* v. *Dolloff,* 94 Ill. 330; *Briscoe* v. *Clark County,* 95 id. 309.

The county is liable for the pay of an assistant jailer or turnkey, if his services are necessary. Rev. Stat. chap. 75, secs. 2, 3, 24.

The claims set out in breaches 3 to 10, inclusive, were not made *virtute officii.* (Rev. Stat. chap. 53, sec. 51.) Therefore, for money paid on such claims the sureties on the sheriff's bond are not liable. Baylie on Sureties, 163, 164; *Gerber* v. *Ackley,* 37 Wis. 43; *Alcock* v. *Andrews,* 2 Esp. 542; *Serley* v. *Birdsall,* 15 Johns. 267; *Morris* v. *Van Yoast,* 15 Wend. 283; *State* v. *Mann,* 21 Wis. 684; *Battes* v. *Hamlin,* 22 id. 669; *Commonwealth* v. *Cole,* 6 B. Mon. 250; *People* v. *Moon,* 3 Scam. 123; *Reynolds* v. *Hall,* 1 id. 35.

Money paid voluntarily under mistake of law can not be recovered. *Elliott* v. *Swartout,* 10 Pet. 137; *Adv. and Trib.*

*Co.* v. *Detroit*, 43 Mich. 116; *County* v. *Randall*, 43 id. 137; *Hedrick* v. *United States*, 16 Ct. of Cl. 88; *McKee* v. *United States*, 12 id. 532; *McKnight* v. *United States*, 98 U. S. 179; *Cox* v. *Mayor*, 103 N. Y. 519; *Supervisors* v. *Brigg*, 2 Denio, 26; *Downs* v. *Donnelly*, 5 Ind. 496; *Snelson* v. *State*, 16 id. 29.

In a declaration for a breach of an official bond, with conditions, every conclusion except that of a breach of the condition by the averments of the pleadings must be excluded. Murfree on Official Bonds, secs. 536, 540, 558; *Jones* v. *Clayton*, 4 M. & S. 349; *State* v. *McClane*, 2 Blackf. 192; *State* v. *Soverns*, 6 id. 168.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

The questions arising upon this record involve a consideration of the liability of a sheriff and his sureties upon his official bond, and, as will be seen hereafter, arise upon the pleadings. The first breach assigned counted for certain moneys coming to the hands of the sheriff during his term of office, belonging to the county of Macon, and being fees earned by former sheriffs of that county. The defendants below, by their ninth plea, denied that said moneys came to the hands of the sheriff during his term of office, and averred that the same were voluntarily paid by the county board of the county, to the sheriff, after the expiration of his term of office. The correctness of the ruling of the circuit court in overruling a demurrer to this plea is questioned.

The condition of the bond is in the usual form, as follows: "The condition of this obligation is such, that if the above bounden William W. Foster shall well and faithfully perform all the duties required of him, or to be required, by law, as sheriff of Macon county, State of Illinois, then and in that case this bond is to be void and of no effect, otherwise in full force and virtue." A surety is not to be held liable beyond the terms and letter of his contract. Such liability is *strictis-*

*simi juris,* and is not to be extended by construction or implication. It would seem clear that the sureties upon the sheriff's bond are liable only for the acts of the sheriff during his term of office, or while he is exercising the functions of his office pursuant to law. If, therefore, the money mentioned in the first breach was voluntarily paid to said Foster after the expiration of his term of office, as alleged in the plea, there would be no liability therefor against his sureties on his official bond, and the demurrer was properly overruled. This question was before this court in *The People* v. *Toomey et al.* 122 Ill. 308, and it was there held that the sureties upon the bond of the county clerk were not responsible for his failure to pay over moneys paid to him by direction of the county board of his county, after the expiration of his term of office.

To the twenty-second breach the demurrer was properly sustained, for the reason, that while the sheriff is *ex officio* keeper of the common jail of the county, and the burden of that duty is by law cast upon him, it is entirely competent and lawful for the county, through its proper authorities, to provide for and pay all such assistants as in their discretion may in any emergency be demanded. The sheriff is by law (Rev. Stat. chap. 75, sec. 3,) empowered to appoint an assistant jailer, and, as we held in *Seibert* v. *Logan County,* 63 Ill. 155, when the sheriff appoints a jailer, no right of action accrues to the person thus appointed, against the county, for his services; yet, where the county voluntarily pays such assistant, no recovery can be had from the sheriff therefor by the county. Section 24 of the same chapter of the statute provides that the cost and expenses of keeping, maintaining and furnishing the county jail, and of keeping and maintaining the prisoners thereof, except as otherwise provided by law, shall be paid from the county treasury, the account therefor being first settled by the county board. The law has wisely vested in the county board a large discretion to make such provision as the exigency of keeping the prisoners may require, and if, in the ex-

ercise of reasonable discretion, for any cause satisfactory to the county board, additional guards or assistants should be found necessary, we know of no provision of law or principle of public policy that would prevent their making a reasonable allowance therefor from the county fund. And if it be within the scope of the authority conferred by the statute, for the county board to pay such assistant jailer, and they did so, upon an account rendered therefor, as alleged in the breach, there is no liability on the sheriff's bond.

One of the principal questions, however, arises in respect of the ruling of the court in sustaining a demurrer to breaches from three to eighteen, inclusive. As will be seen, breaches from three to ten, inclusive, are for the recovery of money voted out of the county treasury to the sheriff, upon what are called by counsel the quarterly reports made by the sheriff to the chairman of the county board, and presented to the meetings of the board in March and September of each year, during the sheriff's term of office, and which are not required by law, but which were received and acted upon by the board, and the several allowances made to the sheriff to make up the excess of his compensation and expenses over and above the amount of fees collected by him, and allowances made by the board, at the time of presenting such reports, severally. Breaches eleven to eighteen, inclusive, are for money paid by order of the county board to the sheriff, upon his semi-annual report, required by law to be made to the board. Each of these reports, after giving credit by all fees collected and by the allowance upon the previous reports, shows, as alleged, that the compensation of the sheriff and expenses of his office exceeded the amount collected and received by him, and that for such balance the county board, upon the claim and demand of the sheriff, as it is alleged, ordered the same paid out of the county treasury, and the same was received and converted by the sheriff. All of these reports, it is alleged, were duly and properly verified. It is insisted that the sheriff, having wrongfully

received the money, and the same having been wrongfully allowed and paid by order of the county board, and he having refused to repay the same into the treasury upon demand, a right of action accrued therefor upon his bond.

It is first insisted, that the reports made in March and September, and called quarterly reports, were made by the sheriff in violation of law, and that the county board was without authority to act upon such report. Section 51 of chapter 53 provides, that in counties under township organization,—as this county was,—officers who are paid in whole or in part by fees shall make report to the chairman of the county board in June and December of each year; and on the coming in of such reports, if the officer shall have money remaining in his hands, he shall pay it into the county treasury. There is nothing in the statute prohibiting reports to be made at other times or to any meeting of the board, or rendering it unlawful for the officer, at any time, to pay money into the county treasury. In no event is it shown that the county was, or could have been, injured by such action of the sheriff and board, if unauthorized. Nor is it anywhere alleged in these breaches that there were or were not fees of the sheriff, earned in criminal cases where the defendant was acquitted or otherwise legally discharged, for and on account of which it is conceded the several allowances could have been made by the board to the sheriff, and as it is provided by the statute may be done where the fees collected and reported are insufficient to pay the compensation earned; nor that there was any unlawful confederation of the sheriff and the county board to despoil the county. What is shown is, simply, that the sheriff presented reports showing that the fees collected and allowances theretofore made did not equal the amount of his compensation for the time stated in such reports, and a demand on the part of the sheriff that the county pay him such deficiency, and which the county board ordered paid out of the county treasury. It is clear the sheriff could not rightfully

make such demand, for it is expressly provided in the statute that the compensation of the sheriff shall be paid, if at all, out of the fees and emoluments of his office, and it is equally clear that no allowance can be made therefor, by the order of the county board, out of the treasury, unless the same officer has theretofore made payments into the county treasury of fees and emoluments of his office, (and not then in excess of such amounts so paid in,) or in case where there are criminal fees earned of the character before mentioned. The illegal demand of the sheriff in no way justified the illegal act of the county board, for whatever the character of the sheriff's report or demand, it was the plain and imperative duty of the county board, under the statute, to "carefully audit and examine every such report, and ascertain the exact balance of such fees, if any, held by such officer, after such expenses as the board may approve and allow, and such salary and unpaid balance of salary from previous returns shall have been deducted from the gross amount shown by such report to have been paid into or collected by such officer;" and if "there shall appear to be a balance due to such officer at the time of making such report, and such officer shall have previously paid into the county treasury any fees collected by him, the board shall make an order on the county treasury in favor of such officer for the balance so found due him, provided the amount of such order shall not exceed the amount of fees previously paid into the treasury by said officer." So that in respect of each amount sought to be recovered in the several breaches under consideration, they were paid, if as alleged, and allowed by the county board, without authority of law. Whatever the liability of the county board may be for a failure to perform the duty imposed upon them by law as agents of the county, it is clear that the cases made by the several breaches under consideration show a voluntary payment of money out of the county funds upon the demand of a person who was not entitled by law to receive the same.

It is said by counsel, that the board acted in good faith, believing they had a right to make the allowance upon the report and demand of the sheriff. This, at most, if true, was a mistake as to the law. There are no facts averred in these breaches showing that the board was misled as to any matter of fact, nor is it pretended or averred that the items contained in the reports, severally, were untrue or false statements of fact, or that they were not a correct report of the compensation earned and office expenses incurred at the date of each, respectively, together with the fees collected and amounts received by the sheriff with which he was justly chargeable.

The money was voluntarily paid by the board upon a mistake of law, and without fraud or mistake of fact, and money thus paid can not ordinarily be recovered back. It seems to be well settled, as between individuals, that where money is voluntarily paid under a mistake as to the law, and under a claim of right, it can not be recovered back. *Elliott* v. *Swartwout*, 10 Pet. 137; *Muratt* v. *Wright*, 1 Wend. 355; *Brisbane* v. *Bacres*, 5 Taunt. 144; *Billby* v. *Lumby*, 2 East, 469; *Adv. and Trib. Co.* v. *Detroit*, 43 Mich. 116; *McKnight* v. *United States*, 98 U. S. 179; *Cox* v. *Mayor, etc.* 103 N. Y. 509; *Supervisors* v. *Briggs*, 2 Denio, 26; *Snelson* v. *State*, 16 Ind. 29.

If the principle is applicable to the case made by the breaches, it is decisive against the right of recovery, even if it be conceded that the breaches are sufficiently specific in other respects. The county board are the agents of the county, and are charged by law with the control and management of its fiscal concerns. They are also, as we have seen, charged with the duty of carefully auditing and examining every report of every county officer made to them, and of determining the balances for or against the county, and also to determine the state of account after the allowance of "such expenses as said board may approve and allow," etc. This court is committed to the construction of the statute, that the amount fixed by the county board "for necessary clerk hire, stationery, fuel, lights,"

etc., to a county officer, remains under the control of the board, and may be changed at any time, when, in their judgment, the necessity therefor exists. (*Cullom, etc.* v. *Dolloff*, 94 Ill. 330; *Briscoe* v. *Clark County*, 95 id. 309.) Moreover, by express provision of the statute, any balance found to be due to the officer for his compensation, upon such auditing and examination by the board, may be paid by the board out of the county treasury, if, during the same fiscal year, there remain fees earned by such officer of an amount sufficient, in criminal cases where the defendant has been acquitted or otherwise legally discharged. (Rev. Stat. chap. 53, sec. 19.) It seems clear that the county board must, in the first instance, determine whether the conditions exist authorizing the payment from the county treasury,—that is, they have jurisdiction to consider and pass upon the question. For aught that appears from any averment of this pleading, the board may have been fully justified in allowing and paying these several sums of money to the sheriff. But whether that be so or not, it is clear that these allowances to Foster were within the general scope of authority conferred by law upon the county board. If they decided wrongfully, it was an error of judgment,—a mistake as to their authority to make the particular allowance. They must be presumed, in the absence of averments to the contrary, to have known, as it was their duty to know, the state and condition of affairs, and to have acted in view of them. Where the county board, acting within the general scope of its authority, and with knowledge of the facts, settles with the officer, who is guilty of no fraud, concealment or misrepresentation of fact inducing the action of the board, and pays from the county treasury the amount found due to him upon auditing and examining the officer's reports, it is to be treated as a voluntary payment of money, and will fall within the principle announced, and no action will lie against the sureties upon the officer's bond to recover the same back. See *Cox* v. *Mayor, etc., supra; Supervisors* v. *Briggs, supra; Snelson*

v. *State, supra; Adv. and Trib. Co.* v. *Detroit, supra; County*
v. *Randall,* 43 Mich. 13 ; *Hedrick* v. *United States,* 16 R. Ct.
Claims, 88 ; *McKee* v. *United States,* 12 id. 532.

The case of *Dwight* v. *Palmer,* 74 Ill. 295, is clearly distin-
guishable in its facts from the case at bar. There was there
no question of the liability of sureties, and the money was ob-
tained by fraud in fact. So, also, in the case of *Lovingston* v.
*Board of Trustees,* 99 Ill. 564. The opinion of the majority of
the court in that case seems to be based upon the fact that the
township treasurer had rendered himself and sureties liable
by accepting certain city warrants, instead of demanding and
receiving money to which the township was entitled ; and that
the subsequent service for which the allowance was made and
paid him by the board of trustees, was done to relieve himself
and sureties from such liability. In other words, that being
liable for the whole amount of the city warrants at par value,
it was not in the power of the board of trustees to relieve him
from such liability by making him an allowance unauthorized
by law.

The county board is expressly prohibited from increasing
the compensation of the officer in any way during his term,
and if they should do so, the act will be unauthorized and ab-
solutely void. (*Supervisors* v. *Knipper,* 37 Wis. 496 ; *School
Directors* v. *Parks,* 85 Ill. 338.) Here, however, that was not
attempted to be done. Whatever they paid him was as part of
his compensation previously fixed, as provided by law, and for
expenses of his office allowed by the board. Moreover, while it
is true, generally speaking, that in the assignment of breaches
upon official bonds, such general assignment will be sufficient
as will put the party upon notice of what he is called upon to
defend against, (*Governor* v. *Ridgway,* 12 Ill. 14,) yet the rule
is, that in such actions the declaration must not only state the
facts relied on as constituting a breach, distinctly, but there
must be such allegations, also, as effectually exclude any other
conclusion than that a breach of the condition has taken place.

(Murfree on Official Bonds, 533, 540, 558, and authorities cited.) If, therefore, the money voluntarily paid could be recovered back, these breaches are faulty in not averring such facts as will exclude the conclusion that it might have been lawfully paid to the sheriff. Every allegation of the breach may be true, and it still remains a lawful payment from the county treasury.

No extended discussion will be necessary in respect of the nineteenth breach. It seeks to charge the sureties on the bond of the sheriff for an act which he was not authorized by law to perform, and which could not be done under color of office. The *gravamen* of the breach is, that he falsely and fraudulently, as sheriff, certified to bills of third persons against the county for services as bailiffs, which had not been rendered. It is clear that no right of action could accrue upon the sheriff's bond for the money paid by the county because of this certification by Foster, however false. His act, if as alleged, was not done by virtue of any authority or power given him by law, nor in color of any such authority. If the county board improvidently allowed such claims upon the recommendation of Foster, it can no more affect these sureties than if the recommendation had been by any third party. The sheriff is authorized by law to appoint a jailer, deputy, and such bailiffs for attendance upon courts as may be necessary and permitted. Because of the requirement of the law that the sheriff shall attend the several courts of his county, which is directory, only, "it has been deemed advisable that this ancient office (of bailiff) be perpetuated, that the court, in counties having a number of tribunals, may have at its bidding a sworn officer to enforce its orders affecting the present business of the court." It seems that our statute is silent upon this subject, but it does provide a *per diem* for constables who may be required to attend upon the sittings of courts of record, to be paid out of the county treasury; and it would seem that the provision thus made was intended to supply the bailiffs necessary to

the transaction of the business of the courts. So far as we are aware, the practice has been for the judge presiding to certify to the number of bailiffs required, and their attendance; but whether this be the correct practice or not, the sheriff, by virtue of his office, is neither required nor authorized to certify thereto. The demurrer was properly sustained.

Breach No. 20 is a general breach, covering the various sums of money alleged to have been wrongfully received by the sheriff in breaches from three to ten, inclusive. Breach twenty-three is a like general breach, covering the sums of money alleged to have been wrongfully received by the sheriff in breaches eleven to eighteen, inclusive. For the reasons heretofore assigned in respect of breaches three to eighteen, inclusive, we are of opinion the demurrer was properly sustained to said breaches twenty and twenty-three.

Breach twenty-one alleges that fees collected by the sheriff during his term of office, etc., exceeded the amount of his compensation or salary fixed by the board, and that during such term there accrued, as fees for committing and discharging prisoners from the jail, a large amount, aggregating $383.50, which it was the duty of the officer to report as earnings of his office, but that he, fraudulently and illegally intending to defraud the county, incorporated said sum of $383.50 (the amount of such fees) under the name of "ins" and "outs," in his account, as keeper of the jail, rendered to the board, of costs and expenses of keeping and maintaining the jail and the prisoners therein, and claimed and demanded payment of the same, and the board, by being deceived, etc., by mistake paid the same out of the county treasury to said sheriff. There is no averment that such earned fees were collected by the sheriff other than from the county, or that there was any part thereof that was not chargeable by law against the county. The averment is, that these fees were included in his report for keeping prisoners, etc., and were paid by the county. If such fees, as it must be presumed was the case, were proper

charges against the county, it was the duty of the sheriff to report them to the county as fees earned, and it was entirely legitimate and proper, as in other cases where the fees are proper charges against the county, as in the service of venires and the like, for the board to audit and allow such fees, and draw an order on the county treasurer therefor in favor of the officer. But it was also the duty of the officer, in his next report, to charge himself with the money so received, and apply the same, so far as necessary, upon his compensation as fixed by the board, or in payment of expenses allowed by the board, and if any excess remained in his hands, to pay the same into the county treasury. There can be no distinction between fees earned by the officer chargeable to the county, and those chargeable to individuals. They must, in each instance, be paid to the officer, and he must account in the same manner for each thereof. Intendments are to be taken most strongly against the pleader; and there is here no allegation that the sheriff failed to account, in his reports to the board, for said sum of $383.50, so paid him out of the county treasury for such fees. The allegation is, that the fees accrued to him, and that he failed to report the fees so earned. It can not be of importance, while it is his duty formally to report all fees earned, that his report thereof was informal, or under the head of "ins" and "outs," if the board allowed and paid the same, and he has faithfully accounted to the county therefor. The demurrer to this breach was properly sustained.

The twenty-fourth breach, in that it is argumentative, and fails to state a cause of action within the rule heretofore announced, was insufficient, and the demurrer thereto was properly sustained.

It remains to consider the second breach. This breach seeks to recover $1278.41, being the amount of apparent deficiencies in the compensation of Foster for his entire term, as shown by his reports, and which, it is alleged, was paid to Foster by the county board out of the funds of the county,

he having during that time earned fees in criminal cases where the defendants were acquitted or otherwise legally discharged, to the amount of $2000, when in fact, as it is alleged, there was no such deficiency,—that said Foster, as sheriff, having collected an amount in excess of such reported deficiencies, retained and converted the same. The amount of compensation is alleged to have been fixed at $1800 per year, aggregating for the term $7200. It is alleged that the entire amount reported by the sheriff as collected was $5921.59, which left an apparent deficit of $1278.41, and which it is alleged the county paid him out of the general fund of the county, he having returned and paid no fees into the treasury. It is also alleged, that during said term of office, he, as sheriff, collected fees and received emoluments of his office aggregating more than said sum of $1278.41, which he failed and neglected to report and pay over, so that said deficiency did not, at the time of its payment, in fact exist. The items making up his aggregate are alleged to be, moneys received from the State for conveying prisoners to the various penal and reformatory institutions of the State, $1256.70; for service of process received and served by him from foreign counties, $100; and also other fees received by him to amount of $246.33, which it is alleged he failed and neglected to report, as required by law. The breach also alleges that there was collected by him, as fees, during said term of office, from litigants, $4748.92; from the State for conveying prisoners, $1256.70; and for per diem and attending court, $1419,—which exceeded the amount of his compensation as sheriff, and with which it was his duty by law to have charged himself.

The legal effect of this breach is, that he failed to report, of fees earned and collected by him, an amount exceeding $1278.41, and that by the fraudulent concealment and failure to report the same, the county board, out of criminal fees earned, paid him that sum, when, in truth and in fact, there was no deficiency in his compensation, etc. If, by reason of

his failure to report and account for fees collected by him, the county has been damnified, a right of action would exist upon his bond therefor; and if, as sheriff, in violation of his duty to report to the chairman of the county board the fees actually collected by him, he suppressed the fact that he had collected certain fees which he had collected, and the county board paid him a reported deficit in his compensation as sheriff, out of the county treasury, upon the assumption that it might lawfully do so, by reason of the earned fees of the sheriff in criminal cases where the defendant had been acquitted or otherwise legally discharged, (*Marion County* v. *Lear*, 108 Ill. 343,) it seems to us clear that an action would lie on behalf of the county to collect the money so retained and unreported by him, or for the money paid by the county to him under a mistake of fact, to make up the deficit,—and in the latter case it can make no difference whether there were fees earned in criminal cases, as before mentioned, or not. Section 19, chapter 53, of the Revised Statutes, provides for payment out of the county treasury the fees of the sheriff where the defendant has been acquitted or otherwise legally discharged, but it would seem to require that such payment out of the treasury shall apply only upon the compensation allowed the sheriff for the year in which such fees are earned. The first proviso to that section is, "that no such fees shall be paid to the sheriff from the county treasury when the fees collected by him *during such year* shall equal the compensation or salary allowed him by the county board." But, if the county board was induced, as it is alleged, to pay the money from the treasury because of the failure of the sheriff to discharge his duty, and upon the assumption that a deficit in fact existed when in truth there was no deficit, it is not material that the board was mistaken as to a matter of law, (see authorities *supra*,) for, if made as alleged, it was done under a mistake of fact, induced by the false representations and reports of the sheriff in failing to make report as he was required by law to do.

It can not be said that the county, or its authorities, owed any duty to the sureties on the sheriff's bond in respect of the duties to be performed by that officer. By the statute (sec. 51, chap. 53,) it is made the duty of the sheriff, in addition to keeping, in a book in his office, "a full, true and minute account" of all fees and emoluments of his office earned, and of all payments received on account thereof, etc., to make a return, on the first days of June and December of each year, to the chairman of the board of supervisors, which shall show the gross amount of the earnings of his office, and the total amount of receipts on account thereof, "of every name and character." Such report is to be returned under the oath of the officer, as being a just and true account of fees earned, and of all moneys, articles of property or "other consideration," directly or indirectly received by or paid to such officer. The evident purpose or intent of the legislature was to require a full and complete report of all sums of money and values received by the officer, as well as of fees earned, so that the board charged with the duty of auditing the account might therefrom be apprised of the true state and condition of the business of the office; and while the board would not be bound by such report, it may, and undoubtedly frequently does, settle with the officer thereby.

It is said, however, that the board was guilty of gross negligence in not investigating the accounts of the sheriff; that reasonable diligence on their part would have disclosed the fact, if fact it was, that no balance of compensation remained unpaid to the sheriff, and there can, therefore, be no liability against the sureties upon his official bond. If it be conceded that members of the county board were guilty of such gross negligence that they could and ought to be held individually liable to the county for loss of its funds, or to the sureties for any loss they may suffer by such negligence, it is no defense, when the sheriff and his sureties are sued by the county upon his official bond, that the county may have a remedy against

its agent, or that the sureties may have an action over against members of the board. If the sheriff, in making his report, willfully omitted therefrom items of fees collected by him with which he was legally chargeable, he was guilty of fraud in fact, and if such items were omitted by mistake, then the money paid by the county was paid by a mutual mistake of fact on the part of the agents of the county and of the sheriff, and, in either event, a clear right of recovery therefor exists. Payments made under a mutual mistake of fact, although both parties acted honestly and in good faith, may be recovered back; and, although the payor alone was mistaken in respect of his liability, if the payment is induced by the concealment or suppression of fact by the payee,—who is under a legal obligation to disclose it,—such suppression will be a fraud in law, and an action will lie to recover the money so wrongfully paid. The payments here made and sought to be recovered back, if the allegations of the breach be true, were made by the county board under a mistake of fact, into which they were led by reliance upon the official reports made by the sheriff under oath, in apparent compliance with his duty to make full report; and neither he nor the other defendants, who were his sureties for the faithful performance of every duty enjoined upon him by law, can be heard to deny their liability to the county for damages resulting from the failure of the officer to discharge a duty expressly imposed upon him,—and this is so, regardless of whether other officers or agents of the county discharged their legal duty in the premises or not.

The views here expressed dispose of the contention of appellees that the court erred in sustaining the demurrer to the thirteenth plea to the first and second breaches, and the eighteenth plea filed to the first breach. No discussion of them will be necessary.

It is, however, insisted, that certain of the items alleged in the second breach to have been received and retained by the sheriff are not fees or emoluments of his office which he is by

law required to account for and pay into the treasury. First, it is said that the item for conveying prisoners is a compensation allowed by the State for a service performed for the State, and in which the county has no interest or concern. It must, however, be said, that the money thus received is an emolument which Foster received by virtue of his office, and by the statute, as we have seen, he is required to report and account for all fees and emoluments, "of whatever name or character," received by him as such officer. The legislature, not content with using the words "fees" and "emoluments,"—the latter of which, by reference to any standard, will be found to mean that which is received as a compensation for services, or as a pecuniary consideration annexed to the possession of an office, as, salary, fees and perquisites,—have seen fit to use language so comprehensive as to include every payment to him which comes to him as such officer. The sheriff is required by law to attend upon the sittings of the courts of record of his county, and is allowed therefor a *per diem*, to be paid out of the county treasury. It is his duty to present his bills therefor, properly verified, and for the county board to audit the same and order the *per diem* earned to be paid from the county fund. There are numerous instances where fees earned by the officer are made by law payable out of the county treasury, and in all such cases they are to be treated as other fees earned by the officer, as before stated. We think it clear that Foster was required to account for the amounts received by him as sheriff from the State or the county treasury, or from any other source, for any service he, as sheriff, was required by law to perform.

Appellant insists that the court erred in overruling its demurrer to the sixth plea to the second breach. That plea confesses the receipt by Foster of the sum of $1256.70, for conveying convicts, etc., as alleged in the breach, but denies that he appropriated the same, or any part thereof, to his own use, and avers that he necessarily expended the same in de-

fraying the cost and expenses of conveying said convicts, etc. It is made the duty of the county board, as we have seen, to audit the sheriff's report, and ascertain the balance of fees, etc., after deducting such expenses as the board may approve and allow. It is also made the duty of the sheriff to report his expenses to the board. It would clearly be the duty of the board to allow the officer all necessary and legitimate expenses incurred by him, and upon failure to do so, he might recover the same by the appropriate remedy. It therefore follows, that he could not be chargeable upon his bond for this money, if, in fact, it was necessarily expended in the performance of the service for which it was received, and he should be charged only with the residue, if any, after the allowance and deduction of the actual and necessary expense incurred. The demurrer was properly overruled.

It is also assigned for error, that the court erred in overruling the demurrer to the third plea to the second breach. This plea is, that Foster, as sheriff, did not, during his term of office, receive of fees, etc., a sum equal to the amount of his fixed compensation for said term, a demurrer to which was overruled, and the demurrer carried back to the second breach and sustained thereto. The plea is faulty, in that it attempts to answer the whole breach and fails to do so, and that it presents an immaterial issue. If it be true that he did not receive a sum equal to the amount of his compensation, yet if he received a sum in excess of the amount reported by him, on account of which he drew funds from the county treasury, the right of action would exist for the recovery of such sum. The court erred in not sustaining the demurrer thereto, as well as in carrying the same back and sustaining it to the second breach.

It was also assigned for error, that the court overruled a general demurrer to the fourth plea filed to the same breach. We are of opinion that the demurrer was properly overruled. There is much in the plea that is perhaps immaterial and that

would present immaterial issues, but it is alleged therein that the total amount of fees, etc., received by Foster during his term of office as sheriff was $5921.59, only, and fell short of his compensation $1278.41, which, if true, would be a complete answer to the breach.

It is also assigned for error, that the court erred in overruling the demurrer to the nineteenth plea filed to the second breach. That plea is, that the defendants are not liable, etc., because the fees paid to Foster by the county board for attendance upon the courts thereof, "are not such fees as can be used for his personal compensation," etc. The court erred in not sustaining the demurrer to this plea. The plea presents a conclusion of law, and not an issuable fact. Moreover, as we have seen, the fees and emoluments received by the sheriff from the county stand upon like footing with other fees, and must be accounted for in like manner.

It is also assigned for error, that the court overruled a demurrer to the fifth plea and carried it back and sustained it to the second breach. This plea confesses that Foster received from the State, during his term of office, $1256.50 for carrying convicts, etc., but denies he was required by law to report the same, etc. For the same reasons applicable to the nineteenth plea, it must be held that the court erred in not sustaining the demurrer to this fifth plea.

For the error in overruling the demurrer to the third, fifth and nineteenth pleas, and in carrying the same back to the second breach and sustaining the demurrer thereto, the judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court for further proceedings.

*Judgment reversed.*