## James Y. Campbell, Alfred Sample and Charles Bogardus v. The People of the State of Illinois, for use of the County of Ford.

1.  COUNTIES—*When the Board May Audit Fees, etc.*—When fees are
a proper charge against the county, the county board may audit and
allow them and draw orders therefor on the treasurer, and the officer to
whom such fees are paid should charge himself with the amount so
received in his next report.

2.  OFFICERS—*Fees.*—There is no distinction between fees earned by
an officer, chargeable to the county, and those chargeable to individ-
uals; they must in each instance be paid to the officer, and he must
account for the same to the proper authorities.

3.  COUNTIES—*Duty of Clerk in Drawing and Treasurer in Counter-
signing Orders.*—It is the duty of the clerk to present the order to the
treasurer to be countersigned, before delivering the same to the person
for whose benefit it is drawn, and it is the duty of the treasurer to
examine the records of the county board, and ascertain that the issuing
of the order is warranted thereby, and if it so appears, to countersign
the same.

4.  SURETIES—*Release of, on Official Bond.*—Sureties on the official
bond of a county clerk are not released from liability for the malfeasance
of the clerk, because of the malfeasance of the treasurer in failing to
examine the records of the county board, to ascertain if county orders
presented to him by the county clerk to be countersigned have been law-
fully issued.

5. OFFICERS—*Liability of Sureties—For What Acts.*—The object of an officer's official bond is to provide indemnity against his malfeasance as well as his misfeasance or nonfeasance.

6. OFFICERS—*Official Acts Defined.*—An official act is any act done by an officer in his official capacity under color and by virtue of his office.

7. OFFICIAL BONDS—*What is Not a Defense to Suits on.*—The fact that a county board might, by the exercise of due care, have discovered that orders were improperly issued and have refused to approve the report of the treasurer, whereby the loss would have fallen upon the latter and not on the county, is no defense by sureties to a suit on the clerk's official bond. It is not a defense that by the exercise of superior diligence the victim might have prevented the successful operation of the fraud.

8. COUNTY CLERK—*Acts Colorably Official, Binding upon Sureties.*—The act of a county clerk in issuing county orders being colorably official, made possible by virtue of his official position, and being such an act as would have been authorized under proper circumstances, and which would receive no credit except from appearing to be an official act, is within the indemnity afforded by the bond and is binding upon the sureties.

**Memorandum.**—Debt on the official bond of a county clerk. In the Circuit Court of Ford County; the Hon. THOMAS F. TIPTON, Judge, presiding. Declaration in debt; special breaches assigned.

Stipulation: "For the purposes of this trial, the plea of general performance shall be considered as filed in this cause by the defendants appearing and the similiter shall be considered into such plea. That under the pleadings thus made all proper and competent evidence may be offered by either parties, that might be offered or considered under any proper pleadings that might or could be pleaded in such cause, or any evidence that might or could be offered under any special plea that might properly be pleaded or interposed by the defendants appearing in this cause."

Tried by the court; finding and judgment for the plaintiff. Damages, $1,316.74. Defendants appeal. Heard in this court at the May term, 1893, and affirmed. Opinion filed December 8, 1893.

The opinion states the case.

APPELLANTS' BRIEF, ALFRED SAMPLE, E. C. GRAY, C. H. YEOMANS AND J. H. MOFFETT, ATTORNEYS.

Are sureties on a county clerk's bond liable for money paid to the county clerk on the order of the board of supervisors for fees earned by the clerk in performing services for the county—such as making tax books, etc.—when at the time

of such payment, the report of the clerk to the board showed
that he had a surplus of collected fees in his hands over and
above his salary, etc.?

We deny liability under such a state of facts and assert
that such payment by the board was unauthorized.   People
v. Toomey, 25 Ill. App. 46; People v. Toomey, 122 Ill. 308;
Marion Co. v. Lear, 108 Ill. 343; Crawford Co. v. Lindsey,
11 Brad. 261.

The county of Ford was the obligee of the county clerk's
bonds and the board of supervisors was its agent.   People v.
Toomey, 122 Ill. 317.

Sureties on official bonds are discharged as to acts of the
obligee, which create or increase their liability injuriously.
Brandt on Suretyship, Ed. 1878, Secs. 457, 536; Murfree on
Official Bonds, Secs. 755, 788; People v. Toomey, 122 Ill.
317.

Sureties are not liable for money which their principal was
not entitled to receive.   Brandt on Suretyship, Ed. 1878,
Secs. 451, 483, Ed. 1891, Sec. 528; People v. Pennock, 60 N.
Y. 521; Nolly v. Calloway Co., 11 Mo. 447; Mahaska Co. v.
Ruan, 45 Iowa, 328; Seymour et al. v. Haines, 104 Ill. 557;
People v. Moore, 3 Scam. 123.

Money paid to the principal of an official bond by the
obligee, under a mistake of law, can not be recovered back
from the sureties.   People v. Foster, 133 Ill. 509.

We desire the distinction to be noted between cases,
holding, as in the Foster case—where the money was
actually paid by the order of the obligee of the bond—and
cases where, by order of the obligee of the bond, the prin-
cipal was allowed to retain public money in excess of his
lawful allowance for supposed extra services rendered, as in
Kewaunee Co. v. Kniffer, 37 Wis. 496.

The court notes the distinction at p. 502.

In this latter case, the officer had lawfully received the
money which the securities had obligated themselves he
should pay over in excess of his lawful allowance.   Hence,
the order for the unlawful allowance being void, the original
obligation of the sureties was not affected.   Money was

not unlawfully paid to the principal by the obligee out of the public treasury, but the obligee attempted to unlawfully allow him to retain public money which he had lawfully received.

We do not deny the general legal proposition, that sureties on a clerk's bond are liable for fees illegally collected from third persons.

Specifically, this is not the law, if voluntarily paid on a mere demand, with a knowledge that there was nothing due, or that the fees had once been paid. This doctrine, however, has no application to fees earned by the clerk and money unlawfully paid to him by the board.

An illegal demand by the officer for the payment of such fees on the obligee of the bond, does not justify the payment. People v. Foster, 133 Ill. 508.

The board of supervisors can not be heard to assert their ignorance of a public law in justification or excuse for such unlawful payment. People v. Toomey, 25 App. 46.

The damages must be confined to those arising from the unlawful act of the officer upon whose official bond the suit is brought. State v. Sloan, 20 Ohio, 327; People v. Leaton, 25 Ill. App. 45; People v. Leaton, 121 Ill. 666.

Appellee's Brief, Cook & Moffett, Attorneys.

Sureties can not plead neglect of board of supervisors. Stern v. People, 102 Ill. 540; People v. Foster, 133 Ill. 496.

That the board of supervisors passed upon the reports of clerk and treasurer makes no difference. Mistakes can be corrected. Kenney v. People, 3 Scam. 357; Washington Co. v. Parlier, 5 Gil. 232; People v. Cooper, 10 Ill. App. 384; Brandt on Suretyship, Sec. 475, et seq.; Ryan v. U. S., 19 Wall. 574; Detroit v. Weber, 26 Mich. 284; Crawford Co. v. Lindsey, 10 Ill. App. 261; Jennings v. Fayette Co., 97 Ill. 419; Satterfield v. People, 104 Ill. 448; Howe v. State, 53 Miss. 57.

The records and reports were competent evidence. Morley v. Town of Metamora, 78 Ill. 394; Cawley v. People, 95 Ill. 249.

As to acts *virtute officii* and *colore officii*, Mechem on Public Offices, Sec. 284; Horan v. People, 10 Ill. App. 21.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This was an action of debt on the official bond of Merton Dunlap, as county clerk of Ford county, for the official term, from the first Monday of December, 1882, to the first Monday of December, 1886. The principal on the bond was not served with process and the cause proceeded to hearing against the sureties alone. A jury was waived and a trial had before the court, resulting in a finding and judgment for the plaintiffs, the damages being assessed at $1,316.74.

The claim of the plaintiffs, upon which the finding was based, was composed of three classes:

1st. Fees collected by Dunlap in Probate and County Court matters and not accounted for by him in his semi-annual reports, $425.23.

2d. Money paid Dunlap on the authority of the board of supervisors for fees earned by him in making tax books and in other services for the county and for costs taxed in insane pauper cases which he did not account for in his semi-annual reports, $482.90.

3d. For money alleged to have been paid to Dunlap by the county treasurer on uncountersigned orders, some of which were authorized, some of which were in excess of the amount authorized, and some of which were wholly unauthorized, the money so received by Dunlap being appropriated by him to his own use and never accounted for, $408.61.

As to the first class appellants make no contention and substantially concede liability therefor.

As to the second, the objection is that at the different times when the items embraced in this class were allowed there was nothing due the clerk for salary, clerk hire or other expenses; that is to say, these allowances were made at various times when there was no unpaid balance due him on his semi-annual settlements and were not included in his reports.

The position as we understand it, is, that the county can

not properly allow the clerk for his fees earned in services rendered the county or in pauper insane cases (which the county is liable for) unless at the time of the allowance there is a balance due the clerk as shown by his reports.

We think this position untenable. Whenever the clerk has a claim against the county for services rendered the county, or for fees which it is unconditionally bound for, there is no reason why he may not ask nor why the county may not pay. He should charge himself with the amounts so received in the next semi-annual report, and in this way the accounts may be properly kept.

This view seems to be supported by the case of The People, etc., v. Foster, 133 Ill. 496. There the court say that when fees are a proper charge against the county, the board may audit and allow them and draw an order therefor on the treasurer, and that the officer should charge himself with the amount so received in his next report.

Quoting from the opinion, "there can be no distinction between fees earned by the officer chargeable to the county and those chargeable to individuals; they must in each instance be paid to the officer, and he must, in the same manner, account for each thereof."

As to the third class, the position is that because the money received by the clerk and not accounted for, was obtained on orders which were not countersigned by the treasurer and which were not payable to the clerk, the sureties are not liable.

It appears that accounts were presented against the county at various times for stationery furnished the county by various firms, and for liabilities to the Deaf and Dumb Institute. The board would audit the bills and order payment, and the clerk would issue orders professedly in pursuance of the action of the board, but it was found that in some instances the orders were issued in excess of the bills allowed, the record being falsely written to that extent, and in some instances wholly without any authority from the board. It was the treasurer's custom to pay the orders to the clerk without having countersigned them, and to report them as

paid to the county board. Having approved the treasurer's report, the board would destroy the orders. The clerk would remit to the claimants but not always the full amount allowed by the board. With such loose and irregular methods prevailing, it was easy for the clerk to defraud the county as well as its creditors. It is now insisted that the treasurer was at fault in paying orders which he had not previously countersigned, and in paying them to the clerk when he was not the payee named therein. Certainly the treasurer was negligent.

It was the duty of the clerk to present the order to the treasurer to be countersigned, before delivering the same to the person for whose benefit it was drawn, and it was the duty of the treasurer to examine the records of the county board and ascertain that the issuing of the order was warranted thereby, and if it so appeared, to countersign the order.

This neglect of duty by the treasurer greatly facilitated the fraudulent act of the clerk.

But are the sureties to be released from liability for the malfeasance of the clerk because of the malfeasance of the treasurer? Clearly not.

It is urged that the law forbids the payment of the funds of the county in the irregular way here practiced; that the clerk acted without authority in that he violated the law, and that his actions were, therefore, not binding upon his sureties.

But the answer is that the clerk obtained this money by the misuse of his official authority to issue orders, and his wrongful act was also an official act in that it was done under color of his office, without which the fraud could not have been perpetrated.

It will not do to say that the clerk was acting unofficially when he violated the law and his duty. If so there would be no use in requiring an official bond.

The very object of the bond is to provide indemnity against his malfeasance, as well as his misfeasance or his nonfeasance. As was said in Turner v. Sisson, 137 Mass. 191,

" By an official act is not meant a lawful act of the officer in the service of process; if so the sureties would never be responsible. It means any act done by the officer in his official capacity, under color and by virtue of his office."

The fact that the treasurer was negligent, or even culpable, does not lessen the fault of the clerk or render his act any less official. While it may inculpate another, it can not relieve him. The People v. Treadway, 17 Mich. 480; Armington v. The State, 45 Ind. 10; Crickett v. The State, 18 Ohio St. 9; Mechem on Public Offices, Sec. 284; Horan v. The People, etc., 10 Brad. 21.

It may be urged that the county board might, by the exercise of due care, have discovered that the orders were improperly issued and have refused to approve the report of the treasurer, whereby the loss would have fallen upon the latter and not on the county.

This position can not be held. It is not a defense that by the exercise of superior diligence the victim might have prevented the successful operation of the fraud.

The act of the clerk in issuing the orders being colorably official, made possible by virtue of his official position, and being such an act as would have been authorized under proper circumstances and which would receive no credit except from appearing to be an official act, is within the indemnity afforded by the bond and is binding as such upon the sureties.

Were not this the rule, then in every case where the clerk violates the law, bringing loss to the county, the sureties may plead exemption on the ground that the act is unofficial because unlawful.

Upon the point that payment was made by the treasurer to Dunlap on orders which were not payable to him, it may be noticed that the orders were payable to the person named therein or to bearer, and that the clerk was apparently intrusted by the payees with the matter of receiving the orders and sending to them by bank exchange the proceeds. This seems to have been the usual course of business. Moreover, we believe it is customary for these orders, which of course

have not the qualities of commercial paper, to pass from hand to hand without indorsement.

Banks usually take them from the holder, and the treasurer usually pays them to the holder without indorsement, where the holder is known and where there are no circumstances of suspicion. This is a well known usage and is a matter of business convenience. We are not able to see how this irregularity, if it may be so termed, can avail as a defense to the sureties. We deem it unnecessary to consider the various holdings and rulings of the court as discussed in the briefs. Three propositions of law were held at the instance of the plaintiffs, which were intended to apply respectively to the three classes of claims embraced in the plaintiff's demand. There is no conflict in the proofs, and we are satisfied that the judgment is in accordance with the law. It will be affirmed.