JAMES Y. CAMPBELL et al.

v. ·

THE PEOPLE OF THE STATE OF ILLINOIS, for use, etc.

*Filed at Springfield January 14, 1895.*

1. BONDS—*liability of sureties of county clerk.* Sureties upon the bond of a county clerk are liable for moneys not accounted for by him which he received from the county treasury for fees in pauper insane proceedings and other matters, audited and allowed by the county board, although, at the time he received such payments, he had a surplus of collected fees in his hands over and above what was then due him for salary, clerk hire and expenses. *People v. Toomey*, 122 Ill. 308, distinguished; *People v. Foster*, 133 id. 496, followed.

2. SAME—*raising amounts of claims after examination by committee.* For amounts fraudulently received by a county clerk, whose duties included the custody and care of bills and accounts against the county, by increasing the amounts called for by such claims against the county between the times when they were examined by the committee and acted upon by the board of supervisors, the sureties on his official bond are liable.

3. SAME—*clerk delivering orders to wrong persons.* The delivery of county orders, signed and issued by the county clerk, to persons other than those for whose benefit they were drawn, and the retention of like orders for his own personal and fraudulent purposes, is a breach of his bond for which his sureties are liable.

4. SAME—*neglect of treasurer to examine records does not release clerk's sureties.* The sureties on the bond of a county clerk are not released from liability for money fraudulently obtained by such clerk upon county orders, by reason of the negligence or misfeasance of the county treasurer in failing to examine the records of the county board, and ascertain that orders were warranted thereby before countersigning the same.

*Campbell et al. v. People*, 52 Ill. App. 338, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Ford county; the Hon. THOMAS F. TIPTON, Judge, presiding.

ALFRED SAMPLE, E. C. GRAY, C. H. YEOMANS, and J. H. MOFFETT, for appellants:

Sureties on a county clerk's bond are not liable for money paid to him, on the order of the board of super-

visors, for fees earned in performing services for the county,—such as making tax books, etc.,—when, at the time of such payment, the report of the clerk to the board showed that he had a surplus of collected fees in his hands over and above his salary. Such payment by the board was unauthorized. *People* v. *Toomey,* 25 Ill. App. 46, and 122 Ill. 308; *Marion County* v. *Lear,* 108 id. 343; *Crawford County* v. *Lindsey,* 11 Ill. App. 261.

The county of Ford was the obligee of the county clerk's bond, and the board of supervisors was its agent. *People* v. *Toomey,* 122 Ill. 317.

Sureties on official bonds are discharged as to acts of the obligee which create or increase their liability injuriously. Brandt on Suretyship, (ed. of 1878,) secs. 457, 536 ; Murfree on Official Bonds, secs. 755, 788; *People* v. *Toomey,* 122 Ill. 317.

Sureties are not liable for money which their principal was not entitled to receive. Brandt on Suretyship, (ed. of 1878,) secs. 451, 483 ; id. (ed. of 1891,) sec. 528; *People* v. *Pennock,* 60 N. Y. 421; *Nolly* v. *Calloway County,* 11 Mo. 447; *Mahaska County* v. *Ruan,* 45 Iowa, 328; *Seymour* v. *Haines,* 104 Ill. 557; *People* v. *Moore,* 3 Scam. 123.

COOK & MOFFETT, for People:

If an officer, by virtue or color of his office, does an act resulting in the payment of money, not authorized, his sureties are liable, and it makes no difference whether the money is paid to him or not. Murfree on Official Bonds, sec. 226; Mechem on Public Officers, sec. 286.

Sureties cannot plead neglect of the board of supervisors. *Stern* v. *People,* 102 Ill. 540 ; *People* v. *Foster,* 133 id. 496.

That the board of supervisors passed upon the reports of the clerk and treasurer makes no difference. Mistakes can be corrected. *Kenney* v. *People,* 3 Scam. 357; *Washington County* v. *Parlier,* 5 Gilm. 232 ; *People* v. *Cooper,* 10 Ill.

App. 384; Brandt on Suretyship, sec. 475, *et seq.; Ryan* v. *United States*, 19 Wall. 574; *Detroit* v. *Weber,* 26 Mich. 284; *Crawford County* v. *Lindsey*, 10 Ill. App. 261; *Jennings* v. *Fayette County*, 97 Ill. 419; *Satterfield* v. *People*, 104 id. 448; *Howe* v. *State*, 53 Miss. 57.

The records and reports were competent evidence. *Morley* v. *Town of Metamora*, 78 Ill. 394; *Cawley* v. *People*, 95 id. 249.

BAKER, J.: Merton Dunlap was county clerk of Ford county for the term commencing on the first Monday in December, 1882, and ending on the first Monday of December, 1886. The appellants, James Y. Campbell, Charles Bogardus and Alfred Sample, were sureties on his official bond. In this suit brought on said bond there was no service on Dunlap. The case was tried before the court without a jury, and the finding and judgment were against appellants and in favor of the People of the State of Illinois, for the use of the county of Ford, for $5000 debt and $1316.74 damages, debt to be discharged on payment of damages and costs. The judgment has been affirmed by the Appellate Court for the Third District. *Campbell* v. *People*, 52 Ill. App. 338.

It seems that there are included in the $1316.74 of damages awarded, three classes of claims made by the county. In respect to the sum of $425.23 there is no contention, it being conceded that that amount is due for fees collected by the clerk in probate matters and in suits at law, and not reported or accounted for by him in his semi-annual reports.

The second class amounts to $482.90, and consists of allowances made to the clerk by the board of supervisors for fees for making tax books and for performing other services for the county, and for fees in pauper insane cases. Section 18 of chapter 53 of the Revised Statutes, which fixes the fees of the county clerk for services ren-

dered the county, expressly provides that such "fees shall be audited and allowed by the county board, and paid from the county treasury." And section 13 of chapter 85 provides : "If the person alleged to be insane is a pauper, the costs of the proceeding, including the fees of the jury, shall be paid out of the county treasury."

The $482.90 in question was never accounted for by the clerk in his semi-annual reports, and it is urged that since these allowances were made by the county board and paid out of the county treasury at times when the clerk had a surplus of collected fees in his hands over and above his fixed salary, clerk hire and other expenses then due, it follows that the sureties on the official bond are not liable to account for the fees so paid by the county. The claim is, that the payments were unauthorized, and that sureties are not liable for money which their principal was not entitled to receive.

There is a very marked difference between the case at bar and *People* v. *Toomey et al.* 122 Ill. 308. In that case, Toomey, the county clerk, upon the expiration of his term of office made a report to the county board, showing in his hands, of fees collected, the sum of $414.23 over and above his compensation, clerk hire and other expenses, and that amount, by direction of the board, he paid into the county treasury. After his term of office had expired, and his successor had qualified and had taken possession of the office and had assumed the performance of its duties, the board made an order directing his successor, as county clerk, to draw an order in favor of Toomey for $2133.78, in payment of a bill presented by him for fees for services performed by him for the county. The successor in office drew the order and delivered it to Toomey, and the latter obtained the money from the county treasury. It was held that Toomey had no right to receive the money after the expiration of his term of office, and that the sureties on his bond were not responsible for its repayment. But the case now before

us stands upon a different footing. Dunlap was still in office, his term not having as yet expired, when the several allowances were made and the moneys drawn from the treasury.

The rule laid down in *People* v. *Foster et al.* 133 Ill. 496, is applicable here. We there said : "If such fees, as it must be presumed was the case, were proper charges against the county, it was the duty of the sheriff to report them to the county as fees earned, and it was entirely legitimate and proper, as in other cases where the fees are proper charges against the county, * * * for the board to audit and allow such fees, and draw an order on the county treasurer therefor in favor of the officer. But it was also the duty of the officer, in his next report, to charge himself with the money so received, and apply the same, so far as necessary, upon his compensation as fixed by the board, or in payment of expenses allowed by the board, and if any excess remained in his hands, to pay the same into the county treasury. There can be no distinction between fees earned by the officer chargeable to the county, and those chargeable to individuals. They must, in each instance, be paid to the officer, and he must account in the same manner for each thereof."

Nor is the case of *Marion County* v. *Lear*, 108 Ill. 343, here in point. The court was there construing a provision in section 19 of chapter 53 of the Revised Statutes, and it was held that the contingency of a deficiency of fees from other sources to pay salary or personal compensation must arise before uncollected fees in criminal cases can be collected from the county. But there is no such condition or limitation in regard to the county clerk's fees provided for in section 18 of the same chapter, and the requirement to audit and allow and pay from the county treasury is absolute ; and the provision in section 13 of chapter 85, for the payment of costs in a pauper insane proceeding, is alike absolute in its terms.

We think that the appellants were properly held liable for the said sum of $482.90 that their principal drew from the county treasury and never accounted for.

The trial court also charged appellants with the sum of $408.61, received by Dunlap on county orders not countersigned, and never accounted for, but appropriated to his own use. These orders were all payable, on their face, to some named third party or bearer. Some of them the board of supervisors authorized to be issued, others were wholly unauthorized, and still others were for sums which were in excess of the amounts authorized.

The bond sued on was conditioned that Dunlap should faithfully perform all duties which were or might be required to be performed by him as county clerk of the county, in time and manner prescribed or to be prescribed by law. It is provided in section 10 of chapter 35 of the Revised Statutes, that it shall be the duty of the county clerk to keep a book, in which he shall enter the number, date and amount of each order upon the county treasurer, and the name of the person in whose favor the same is drawn, and that before any such order is delivered to the person for whose benefit it is drawn, the county clerk shall present the same to the county treasurer, who shall personally countersign the same. It was a breach of duty and of the condition of the bond when the clerk signed and issued authorized county orders and diverted them into an improper channel, instead of delivering them to the persons for whose benefit they were drawn, and it is wholly immaterial whether he delivered them to third persons who were strangers to the orders, or delivered them to himself as an individual, by retaining them for his own personal and fraudulent purposes. It was a violation of official duty and a breach of the bond to deliver or issue authorized county orders that had not been countersigned by the county treasurer. It was a like violation of official duty and the bond to draw and attest, as county clerk, and issue,

county orders which neither the board of supervisors nor the law authorized him to issue. And it was also a breach of official duty and the bond to draw and attest, as county clerk, and issue, county orders for sums of money in excess of the amounts authorized by the board of supervisors. By an official act is not simply meant a lawful act of the officer—it means any act done by the officer in his official capacity, under color and by virtue of his office. (*Turner* v. *Sisson*, 137 Mass. 191; *Horan* v. *People*, 10 Ill. App. 21; Mechem on Public Officers, sec. 284, and authorities cited in notes.) The object of requiring official bonds is to obtain indemnity against the use of an official position for wrongful acts done under color of office. *People* v. *Treadway*, 17 Mich. 480.

It is urged that the law requires a record to be kept of the allowances of claims made by the county board; that the record showing the amounts allowed to the several creditors of the county whose claims are alleged to have been fraudulently enhanced by the clerk in making up the record and county orders issued for the increased amounts, is the only competent evidence of what the corporate action was in allowing these claims, and that such record cannot be collaterally assailed by parol evidence. It is not necessary to hold that the record of what was done by the board can be contradicted in this suit by parol evidence, in order to afford relief against the fraud that was in fact perpetrated, although such fraud is, to some extent, clothed in the garb of a public record, for if we assume that the amounts that appear upon the face of the proceedings of the board, being the amounts for which the orders were issued by Dunlap, were the amounts that were allowed by the board of supervisors, yet it conclusively appears, from the evidence, that these amounts were in excess of the amounts claimed by and really due and owing to the creditors, and in excess of the amounts allowed and reported by the committee on claims, and in excess of the amounts that the creditors actually re-

ceived, through remittances from the clerk, in payment
of their demands, and that the differences between the
amounts for which the orders were issued and the amounts
actually due were collected by the clerk and fraudulently
appropriated to his own use. These facts, and others in
proof, necessarily lead to this conclusion : that if the
record speaks the truth as to the amounts allowed by
the board, then the county clerk fraudulently increased
the amounts called for by the claims against the county,
between the times they were examined by the committee
and acted upon by the board. And if such was the con-
duct of the clerk, whose statutory duty it was to take
custody of and care for and preserve all bills of account
against the county, it was manifestly in violation of his
official duty, and a breach of his agreement in the bond
that he would faithfully perform all duties which were
or might be required of him as county clerk.

Section 7 of chapter 36 of the Revised Statutes makes
it the duty of the county treasurer to personally counter-
sign all county orders, and section 8 provides that he
shall not countersign any county order until he shall
have examined the records of the county board, and as-
certained that the issuing of such order was warranted
thereby. In respect to the county orders involved in
this suit there was a failure on the part of the treasurer
to perform either of these duties. He paid such orders
without their being countersigned, and he paid them
to a person or persons other than the payee or payees
named in any of said orders. It is insisted that because
of these facts the sureties on the bond of the county
clerk are not liable. We think that the sureties on the
bond of the county clerk are not released from liability
for his malfeasance because of the negligence or mis-
feasance of the county treasurer. In *People* v. *Treadway
et al.* 17 Mich. 480, which was also a suit on the official
bond of a county clerk, it was said that if the treas-
urer was culpable for paying the warrant there in ques-

tion, "that does not lessen the fault of the clerk or render his act any less official; it may involve another party in fault, but it leaves his own act unchanged." In *Armington* v. *State*, 45 Ind. 10, it was held that the fact that the mayor signed orders in blank for the city clerk to fill up and countersign, as a matter of convenience or otherwise, did not constitute a defence to the sureties of such clerk for the violation of his official duty. In *Cricket et al.* v. *State*, 18. Ohio St. 9, no such order as the statute specially provided for in regard to the compensation there involved was given, and the court said : "The money was obtained on the auditor's own warrant drawn as auditor, and which he was not authorized by law to draw or use for such purpose. The warrant purported to be an official act. It was drawn under color of office, and constituted the means by which the money was obtained from the treasury. If no more money had been obtained than was due the auditor, though there would have been a misfeasance in the mode of obtaining it, there would have been no substantial injury. But to the extent the money obtained exceeded the amount due there was substantial injury, for which the bond, in our opinion, afforded a remedy."

It seems to have been the usual and customary mode of doing business, as between the county clerk and the county treasurer,—although it was undoubtedly loose, irregular and unlawful,—for the treasurer to pay to the clerk all county orders presented by him, payable to some named payee or bearer, without having counter-signed them. The clerk would then usually remit to the non-resident payees all or some portion of the money collected from the treasurer, and the treasurer would then report the county orders to the county board as paid, and upon approval of his report they would be destroyed. The unlawful acts of Dunlap, under color and by virtue of his office as county clerk, in improperly and illegally issuing and delivering or retaining county orders, were

the dominant and efficient causes for the losses that the county has sustained, although the loose and improper methods that prevailed, as between him and the treasurer, in transacting the business of the county, without doubt afforded the opportunities for the perpetration of the frauds that he committed. But, as already said, the fact that the treasurer was negligent and culpable does not excuse his malfeasance or release his sureties from liability therefor, and our conclusion is, that appellants were properly held accountable for the $408.61 under consideration.

The view we have expressed in regard to the merits of the case precludes any necessity for reviewing in detail the rulings of the trial court upon the propositions of law submitted. The judgment that was rendered accomplished a just result, and there is no error in the record that should reverse it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*