LOUIS GREENBERG *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 22, 1906—Rehearing denied Feb. 7, 1907.*

1. BONDS—*whether bondsmen of a constable are liable depends upon the capacity in which he acts.* Whether sureties on a constable's bond are liable for his wrongful acts depends upon whether he was acting under color or by virtue of his office, as constable, at the time such wrongful act took place; but if there is no connection between his wrongful act and his official capacity or line of duty his bondsmen are not liable.

2. SAME—*when sureties on constable's bond are liable for assault made by him.* Sureties upon a constable's bond are liable for an assault made by him upon the wife of an execution debtor, who was assisting her husband to prepare a schedule of property upon which the execution had been levied by the constable, who struck the woman in his endeavor to prevent the making of a schedule and to thus deprive the execution debtor of his right to an exemption.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

EDWARD H. MORRIS, (C. STUART BEATTIE, of counsel,) for appellants.

WHEELER, SILBER & ISAACS, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action of debt, commenced in the name of the People, for the use of Augusta Balaban, against Louis Greenberg as principal and M. Bromberg and James Foster as sureties, in the circuit court of Cook county, upon the official bond, as constable, of Louis Greenberg.

The declaration was in the usual form in debt upon an official bond, and assigned, as a breach of said bond, that while said Greenberg, as constable, was engaged in levying an execution upon a stock of merchandise belonging to the

husband of said Augusta Balaban, the said Augusta Bala-
ban was assisting her husband in making a schedule of such
merchandise for the purpose of enabling her husband to
claim his exemption as the head of a family, and for the pur-
pose of preventing such schedule being made the said Green-
berg made an assault upon said Augusta Balaban, whereby
she was injured, etc.    The defendants filed a plea of *non est
factum* and a special plea denying that said Greenberg, as
constable, committed any of the acts set forth in the decla-
ration.    Issues were joined upon said pleas, and a trial be-
fore a jury resulted in a verdict in favor of the plaintiff for
the sum of $10,000 in debt, that being the amount of the
penalty of the bond, and $800 damages, upon which verdict,
after overruling a motion for a new trial and in arrest of
judgment, the court rendered judgment in favor of plaintiff,
which judgment, on appeal, was affirmed by the Appellate
Court, and a certificate of importance having been granted,
a further appeal has been prosecuted to this court.

The defendants introduced no evidence, and the evidence
introduced on behalf of the plaintiff fairly tended to show
that Israel A. Balaban had a small retail grocery store in the
city of Chicago, which was carried on by him with the as-
sistance of his wife, Augusta Balaban; that one Cohen
recovered a judgment against Balaban for $3.90 and costs,
and an execution issued thereon, which was placed in the
hands of Greenberg, as a constable, to serve; that Greenberg
went to the store of Balaban, in company with three assist-
ants, to make a levy under said execution; that the amount
claimed by Greenberg of Balaban was $10.70; that Balaban
could not pay the same and asked time to make a schedule
of his personal property, and stated to Greenberg that he
did not have to exceed in value $400 worth of personal prop-
erty, all of which he claimed as exempt from execution under
the exemption laws of this State; that Greenberg refused to
recognize the right of Israel A. Balaban to an exemption or
to allow him time to make a schedule, but he and his assist-

ants immediately proceeded to remove the goods from the shelves of the store and to place them in boxes and barrels; that a brother-in-law of Balaban, who was a deputy clerk of the circuit court of Cook county and who had been sent for by Balaban, arrived while the goods were being removed, and with his assistance, and that of his wife, Balaban attempted to make a schedule of his personal property, and that while thus engaged, Augusta Balaban, under the direction of the brother-in-law and in the presence of her husband, went to a box in which Greenberg had placed a portion of the goods taken by him from the shelves of the store, for the purpose of calling off their number and amount, to the end that they might be placed upon the schedule which was then being prepared; that she leaned over the box for the purpose of ascertaining what was in it, whereupon Greenberg pushed her away; that she again stooped down to examine the contents of the box, when Greenberg picked up the box for the purpose of preventing her from examining its contents, and struck said Augusta Balaban in the abdomen with the box so violently that she was thrown backward upon several boxes or barrels standing in the store; that Augusta Balaban was then far gone in pregnancy, which was apparent to the bystanders, and to which fact the attention of Greenberg had been particularly called by the brother-in-law, with the request that he refrain from injuring her; that three days after being thus injured by Greenberg, Augusta Balaban gave birth to a dead child, and she was confined to her bed and under the care of a physician for a number of weeks as the result of such injury. After the assault upon Augusta Balaban she was put to bed, and a number of women who were in the store raised the amount of money demanded by Greenberg and paid the same to him, and he receipted the payment of the amount upon the copy of the execution delivered to Balaban and released the levy and left the store.

It is apparent from the foregoing statement that the conduct of Greenberg on the occasion of the making of said

levy was oppressive, and the assault by him, under the circumstances disclosed by the evidence, upon Augusta Balaban was wholly unjustified and without excuse, and he .should respond in damages to her for the injury sustained ·by her by reason of his misconduct. The question here, however, presented for decision is, can the sureties upon his bond as constable be held liable in this action for the consequences flowing from such misconduct of their principal? The correct answer to such question depends upon whether or not, at the time Greenberg assaulted Augusta Balaban, he was acting in his official capacity as a constable,—that is, was he acting under color. or by virtue of his said office at the time the assault was made. If he was so acting, his bondsmen are liable; on the contrary, if at the time of the assault there was no connection between the levy of said execution and the assault, it was the personal and not the official act of Greenberg which caused the injury to Augusta Balaban, and his bondsmen are not liable.

In *Turner* v. *Sisson,* 137 Mass. 191, which was a suit upon a constable's bond for seizing the property of one person upon an execution against another, the court held the object of the bond was to make the sureties responsible for the due performance of the constable's official acts, and it was said: "By an official act is not meant a lawful act of the officer in the service of process; if so, the sureties would never be responsible. It means any act done by the officer in his official capacity, under color and by virtue of his office." The foregoing language of the Massachusetts court was cited with approval by this court in *Campbell* v. *People,* 154 Ill. 595, which was a suit upon a county clerk's bond.

In *Clancy* v. *Kenworthy,* 74 Iowa, 740, which was an action upon a constable's bond for making a false arrest, it was contended, as it appeared the constable had no lawful authority to make the arrest, the act was not done in the line of his official duty, and his bondsmen could not, by reason of that fact, be held liable. The court, on page 743,

225—12

said: "In truth, his act was in the line—direction—of official duty, but was illegal because it was in excess of his duty. In the discharge of official functions he violated his duty and oppressed the plaintiff. This is all there is of it. If in exercising the functions of his office defendant is not liable for acts because they are illegal or forbidden by law, and for that reason are trespasses or wrongs, he cannot be held liable on the bond at all, for the reason that all violations of duty and acts of oppression result in trespasses or wrongs. For lawful acts in discharge of his duty he, of course, is not liable. It follows that, if defendant's position be sound, no action can be maintained upon the bond in any case."

In *State* v. *Beckner*, 132 Ind. 371, (31 N. E. Rep. 950,) a constable who had a writ of replevin to execute, forced an entrance into a dwelling house where a sewing machine described in the writ was kept by an inmate and assaulted the owner of the dwelling. While resisting the entry of the officer into the house the householder was injured by the officer, and it was held the constable's bondsmen were liable for the misconduct of the constable in unlawfully entering the dwelling house and assaulting the owner thereof.

In the case at bar Greenberg had gone to the store of Israel A. Balaban to levy the execution, and while he was proceeding to execute the writ by making a levy the execution debtor sought to schedule his personal property for the purpose of claiming his exemption as the head of a family. This he had a right to do, and it was unlawful for the officer to prevent him from so doing, and he might lawfully call to his aid his wife and brother-in-law to assist him in making such schedule. While his wife was attempting to examine the goods which Greenberg had taken from the shelves in the store and placed in a box, for the purpose of calling off their number and amount that the same might be written into the schedule, Greenberg assaulted her, as the evidence fairly tends to show, with a view to prevent a schedule from being made and thereby to deprive the execution debtor

of his exemption. Had Greenberg assaulted the execution
debtor while he was attempting to examine the property
levied upon and before it had been removed from his pos-
session, with a view to make a schedule upon which to base
a claim of his exemption, such act would clearly have been
an official act and rendered the bondsmen of Greenberg liable
to Israel A. Balaban, and we do not see that his wife, Au-
gusta Balaban, stands in a different position to Greenberg
and his bondsmen from that of the execution debtor, at
whose request she was engaged in examining and calling
off the number and amount of goods sought to be taken
under the execution by the constable. It would therefore
appear too plain for argument, that at the time of the assault
Greenberg was acting in his official capacity,—that is, under
color and by virtue of his office,—and that Mrs. Balaban
was so far connected with the execution of said writ as to
make the bondsmen of Greenberg liable for the consequences
of the assault made by Greenberg upon her. In other words,
Greenberg made the assault upon Augusta Balaban while
acting in his official rather than in his private capacity, which
brings his unlawful act clearly within the principles an-
nounced in the cases heretofore cited.

The authorities upon the question of the liability of
bondsmen for the official misconduct of public officers are
not in entire harmony. The appellants largely rely, to show
want of liability on the part of the bondsmen, upon *State
v. Dayton,* 61 Atl. Rep. 624, where the Supreme Court of
Maryland held, in a case somewhat similar to the case at
bar, that the bondsmen of a constable were not liable for an
assault made upon a person who was present while the con-
stable was making a levy upon merchandise in the store
where the person assaulted was employed. (Also *Jewell* v.
*Mills,* 3 Bush. 62, and *South* v. *State,* 18 How. 396.) The
statute in this State provides (Hurd's Stat. 1905, chap. 79,
sec. 9, p. 1272,) that the bonds of justices of the peace and
constables in this State shall be made payable to the People

of the State of Illinois, and "shall be held for the security and benefit of all suitors and others who may be injured or aggrieved by the official acts or misconduct of such justice of the peace or constable, as the case may be." In *Campbell* v. *People, supra,* the court said (p. 601) : "The object of requiring official bonds is to obtain indemnity against the use of an official position for wrongful acts done under color of office." To hold that the bondsmen of Greenberg were not liable, under the facts disclosed in this case, would be to lay down a rule we think inconsistent with the spirit of the statute above quoted and in conflict with what we believe to be the better rule, and the one supported by the greater weight of authority and approved by this court in *Campbell* v. *People, supra.* While we think, by reason of the peculiar language found in our statute, this case may be distinguished from the case of *State* v. *Dayton, supra,* still, if we were of the opinion that case was directly in point, in view of the apparent conflict in the authorities and what was said by this court in the *Campbell case,* we would not be disposed to follow the line of cases in conflict with the case of *Turner* v. *Sisson, supra,* which we think announces the true rule.

The appellants have raised a number of questions on this record in addition to the one already disposed of, among which is that of a claimed variance between the proofs and the declaration, and the want of proper proof to establish the genuineness of certain documentary evidence admitted in evidence upon the trial. The questions thus raised are extremely technical and we think without merit, and while the questions discussed in the briefs have all been considered by the court, we do not deem it necessary to take them up severally in this opinion.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTER took no part in the decision of this case.