COUNTY OF SILVER BOW, RESPONDENT, *v.* DAVIES ET AL.,
APPELLANTS.

(No. 2,785.)

(Submitted January 21, 1910.  Decided February 4, 1910.)

[107 Pac. 81.]

*Officers—Deputies—Official Bonds—Liability of Sureties—Proximate Cause of Loss—Pleadings—Constructions—Implication—Departure—Waiver.*

Pleadings—Construction—Implication.

1.  Under section 6566, Revised Codes, providing that allegations of a pleading shall be liberally construed, with a view to substantial justice between the parties, whatever is necessarily implied in, or reasonably to be inferred from, the allegations, is to be taken as directly averred.

Same.

2.  In an action on the official bond of a district court clerk to recover for losses sustained by the county in paying spurious jurors' and witnesses' certificates issued by his chief deputy, an allegation in the complaint that the latter issued such false and fraudulent certificates as chief deputy implied that he issued them in the form prescribed by statute; that they were issued to persons who had ostensibly served as jurors and witnesses during the sittings of the district court of the county; that on their face they stated the facts required to be stated; and that the ostensible jurors and witnesses had in fact performed no services; and the pleading was therefore not demurrable for alleged insufficiency.

Official Bonds—Deputies—Liability of Sureties—How Determined.

3.  Under section 384, Revised Codes, making the principal and sureties on any official bond liable for the default in office of any deputy appointed by such principal, the liability of the sureties on the bond of a district court clerk for losses sustained by the county through the issuance of spurious jurors' and witnesses' certificates by the clerk's chief deputy depended, not on the fact that in executing and issuing the certificates the deputy was not technically guilty of forgery because he omitted to impress on the certificates the seal of the court, as required by statute, but on the question whether their issuance in the form in which they were issued, and under color of office, operated as an effective cause of the county's loss.

Same—Liability of Sureties—Acts of Other Officers No Defense.

4.  The contract between the county and the sureties on the official bond of the district court clerk did not make the former a guarantor for the proper official conduct of its disbursing officer, the county treasurer; hence it was not estopped to assert liability on the part of the sureties for loss sustained by the wrongful acts of the clerk's chief deputy, because the negligence of the treasurer in paying the bogus certificates, in the issuance of which all the requirements of the statute had not been met, contributed directly to the loss.

Same—Proximate Cause of Loss—What Constitutes.

5. The misconduct of the clerk's chief deputy in issuing the false certificates, and the gross negligence of the county treasurer in paying them in the form in which they were issued, operated as concurrent causes of the monetary loss to the county; therefore, under the rule that where two causes operate concurrently to produce an injury, both are to be deemed proximate causes, and liability attaches to all persons who had to do with putting either in motion, the fraudulent act of the deputy was one of the proximate causes of the loss, liability for which the sureties on his principal's bond could not escape on the ground that the treasurer's act in paying the certificates was the first efficient proximate cause for the injury, and that therefore he alone was responsible.

Pleadings—Departure—Waiver.

6. Where a party fails to insist, in the trial court, upon a reformation of the pleadings on account of an apparent departure in them, such defect is waived.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

Action by Silver Bow County against William E. Davies and the American Bonding Company of Baltimore. Judgment for plaintiff, and defendants appeal. Affirmed.

*Messrs. Walsh & Nolan, Mr. C. M. Parr,* and *Mr. John F. Davies* submitted a brief in behalf of Appellants. *Mr. T. J. Walsh* argued the cause orally.

The act of the deputy clerk was not the proximate cause of the loss to which the county may have been subjected by the payment of these certificates. They offered no justification whatever to the county treasurer for the payments made by him, and afford him, and consequently the county, no basis for an action against the clerk or his bondsmen. In order to entitle the plaintiff to recover, it was necessary, not only to show the wrongful act of the deputy clerk and its loss, but that the relation of cause and effect existed between the two—the former must have been the proximate cause of the latter. That it was not is clearly shown by the case of *Oakland Savings Bank* v. *Murfey,* 68 Cal. 455, 9 Pac. 843. (See, also, *Hatton* v. *Holmes,* 97 Cal. 208, 31 Pac. 1131.) The proximate cause of the loss of the county, if it suffered any, was the negligence of its treasurer in paying out money, not only on a spurious indorsement,

but on an instrument that was void on its face.  The remoteness of the wrongful act of the deputy in reference to the loss of the county prevented recovery.  (See *Whyte* v. *Mills,* 64 Miss. 158, 8 South. 171; *Governor* v. *Wiley,* 14 Ala. 172.)

The case of *Lewis* v. *State,* 65 Miss. 468, 4 South. 429, is readily distinguishable, in that the warrants there under consideration bore both the seal and the signature of the clerk; that is, they were apparently valid warrants.  They were of the same character as those which formed the basis of the prosecution in *Re Terrett,* 34 Mont. 325, 86 Pac. 266.  So are the Illinois cases.  (*Campbell* v. *People,* 154 Ill. 595, 39 N. E. 578; *Spindler* v. *People,* 154 Ill. 637, 39 N. E. 580.)  The court there did not give to the subject of proximate cause the consideration to which its importance entitled it.  Had the court considered the question with the attention and care that was observed by the California court in the *Oakland Savings Bank Case,* it is not improbable that it would have reached a different conclusion.  Such a conclusion would not only more closely conform to the principles of the law, but would enforce a greater circumspection, a more attentive consideration to the admonitions of the law on the part of public disbursing officers.  It has a perfectly obvious tendency to lessen their vigilance if the county may proceed as well against the sureties of the recreant officer who fraudulently issues the void warrants.

No importance can be attached to the averment that it was the custom of the clerk's office to issue witnesses' and jurors' certificates unsealed, and for the treasurer to pay such worthless certificates.  Evidence of such a custom would have to be excluded under the perfectly well-established rule that "a usage in conflict with plain, well-established rules of law is not admissible in evidence in any case, and must be disregarded."  (*Cox* v. *O'Riley,* 4 Ind. 368, 58 Am. Dec. 633.)  "Nor will proof be heard," says the supreme court of Indiana in *Van Camp Packing Co.* v. *Hartman,* 126 Ind. 177, 25 N. E. 901, "of a usage that is contrary to public policy, or good morals, or to the common or statute law."

The county should be relegated to its plain and ample remedy against the treasurer, and he to his right to recover from the parties who obtained from him the amounts of the bogus warrants.

In behalf of Respondent, there was a brief by *Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General.    Oral argument by *Mr. Hall.*

The allegations of the complaint were sufficient, under section 6566, Revised Codes.    (See *Mallory* v. *Benway,* 34 Wash. 315, 75 Pac. 869; Baylies' Code Pleading, 2d ed., pp. 48, 49, 102, 105; 31 Cyc. 80; *Fire Assn.* v. *Ruby,* 60 Neb. 216, 82 N. W. 629.) The word "issued," as used in the complaint, has a well-understood meaning in law, and includes not only the drawing and signing of the certificate, but also the delivering and putting of the same into circulation.    (*State* v. *Pierce,* 52 Kan. 521, 35 Pac. 19; *Folks* v. *Yost,* 54 Mo. App. 59; *American Bridge Co.* v. *Wheeler,* 35 Wash. 40, 76 Pac. 534.)

While the certificates issued by Farrell, as deputy clerk, were void and not the subject of forgery, still his act in issuing the same was clearly a default of his duty and misconduct on his part, for which his principal and sureties are liable.    "The phrase, 'misconduct in office,' is broad enough to embrace any willful malfeasance, misfeasance or nonfeasance in office." (*State* v. *Slover,* 113 Mo. 202, 20 S. W. 788.)    These certificates were false and fraudulent certificates, and the deputy clerk violated his duty in issuing them, and the fact that they were void and not the subject of forgery cannot cure this violation of official duty.    The act of Farrell in issuing these certificates was an act done by virtue of his office.    (*National Bank of Redemption* v. *Rutledge,* 84 Fed. 400; *Feller* v. *Gates,* 40 Or. 543, 91 Am. St. Rep. 492, 67 Pac. 416, 56 L. R. A. 630.)    Nor does the fact that the county treasurer was negligent in paying these certificates, which did not contain the seal of the court, relieve the clerk of the court and his bondsmen from liability for the default and misconduct of his deputy in issuing such certificates.

(See note to *Feller .v. Gates, supra;* also *Commonwealth* v. *Tate,* 89 Ky. 587, 13 S. W. 113; *People* v. *Treadway,* 17 Mich. 480; *Campbell* v. *People,* 154 Ill. 595, 39 N. E. 578; *Spindle* v. *People,* 154 Ill. 637, 39 N. E. 580; *Estate of Ramsey* v. *People,* 197 Ill. 572, 90 Am. St. Rep. 177, 64 N. E. 549; *Greenburg* v. *People,* 225 Ill. 177, 116 Am. St. Rep. 127, 80 N. E. 100, 8 L. R. A., n. s., 1223; *Lewis* v. *State,* 65 Miss. 468, 4 South. 429.)

Counsel for appellants cites the cases of *Oakland Savings Bank* v. *Murfey,* 68 Cal. 455, 9 Pac. 843, and *Hatton* v. *Holmes,* 97 Cal. 208, 31 Pac. 1131, and contends that they lay down the rule that should be followed in the case at bar. These cases are clearly distinguishable from the one at bar. In the cases cited by appellant, the party sustaining the loss was guilty of negligence, and the court held that on account of the negligence of plaintiffs they could not recover on the negligence of the party sued. The *Oakland Savings Bank Case* was distinguished by the supreme court of California, in *Joost* v. *Craig,* 131 Cal. 510, 82 Am. St. Rep. 374, 63 Pac. 840. However, in the case at bar there is no negligence attributable to the plaintiff in the action; and, therefore, the doctrine of contributory negligence or proximate cause has no application whatever.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The plaintiff brought this action to recover on the official bond of the defendant William E. Davies, given as clerk of the district court of Silver Bow county, certain sums of money alleged to have been lost to the plaintiff through the wrongful acts of one W. P. Farrell while acting as Davies' chief deputy. The defendant corporation is his surety. Davies was elected to the office in 1904 for the term of four years, beginning January 2, 1905, and entered upon the discharge of his duties upon that date, having qualified and filed his official bond as required by law. He continued in office during the term. Farrell served as his chief deputy during the year 1905, and a portion of the year 1906. The wrongful acts by which the plaintiff suffered

loss are alleged in the complaint as follows: " (7) That between the sixth day of January, 1905, and the first day of September, 1906, the said W. P. Farrell issued false, bogus, fraudulent, and fictitious juror certificates, which juror certificates represented upon their face, in the aggregate, the amount of nine thousand five hundred and sixty-seven ($9,567.00) dollars; and between the ninth day of July, 1906, and the sixteenth day of August, 1906, said W. P. Farrell, as chief deputy clerk of said district court, issued certain false, bogus, fraudulent, and fictitious witness certificates, which witness certificates represented upon their face, in the aggregate, the sum of sixteen hundred and four and 60/100 ($1,604.60) dollars. That thereafter said false, bogus, fraudulent, and fictitious juror and witness certificates were presented to the county treasurer of Silver Bow county, Montana, for payment, and the same were, by the said county treasurer of Silver Bow county, Montana, paid out of the funds belonging to the county of Silver Bow, which payments aggregated the sum of eleven thousand one hundred and seventy-one and 60/100 ($11,171.60) ; and that, by reason of the misconduct in office of the said W. P. Farrell, chief deputy clerk of the said district court, in the issuance of the said false, bogus, fraudulent, and fictitious juror and witness certificates, the plaintiff, the county of Silver Bow, sustained the loss of eleven thousand one hundred and seventy-one and 60/100 ($11,171.60) dollars. That neither said sum of eleven thousand one hundred and seventy-one and 60/100 ($11,171.60) dollars nor any part thereof has been paid or returned to said plaintiff." Then follow allegations to the effect that demand was made upon the defendants for the amount claimed to be due, and that payment by them was refused.

It is admitted in the answer that Farrell did issue fraudulent and fictitious certificates which purported on their face to be juror and witness certificates, to the amount alleged in the complaint. It is averred, however, that they were of no apparent validity, because they were not issued under the seal of the court as required by law, and that, in issuing them, Farrell acted as an individual, and not as deputy clerk. It is also

averred that payment of these certificates by the treasurer was made in violation of law, because he was prohibited by law from disbursing the funds of the county upon them. The reply denies that Farrell acted as an individual, and not as deputy clerk. It admits that the certificates were not issued under seal. It is then alleged that it had theretofore long been the custom and practice in the clerk's office to issue juror and witness certificates without seal; that this custom was well known to, and acquiesced in by, defendants; that the certificates mentioned in the complaint had, because of it, been treated by the treasurer as valid, and had therefore been accepted and paid; and that for this reason the defendants ought to be, and are, estopped to say that said certificates were not under seal.

After hearing the evidence introduced by plaintiff, the defendants having declined to introduce any, the court directed the jury to return a verdict for plaintiff. The appeal is from the judgment upon the judgment-roll alone. The questions submitted for decision are: (1) Does the complaint state a cause of action? And (2) In view of the admissions in the reply, did the court err in entering judgment for plaintiff?

1. It is argued that the complaint is insufficient, in that it gives no information as to the character of the certificates or what they recited, or how they were signed, or to whom they were addressed. It is alleged that the defendant Davies was duly elected to the office of clerk, and that, having qualified, he entered upon the discharge of his duties as such and was occupying the office during the time mentioned; that Farrell was his chief deputy; that as such deputy during the time mentioned he issued the fraudulent and fictitious certificates; and that they were thereafter presented to the treasurer of Silver Bow county for payment, and were paid out of the funds of the county. Under the Code, it is the rule that the allegations of a pleading are to be liberally construed, with a view to substantial justice between the parties. (Revised Codes, sec. 6566.) "Under favor of this rule, whatever is necessarily implied in, or is reasonably to be inferred from, an allegation is to be taken as directly

averred.'' (Phillips on Code Pleading, 352; Baylies on Code
Pleading, 49, 102; 31 Cyc. 80.) The allegation that Farrell
issued the certificates as chief deputy implies that he issued them
in the form prescribed by the statute—that is, over the signa-
ture of the clerk, his principal, attested by the seal of the court
(Revised Codes, secs. 3154, 3179, 3183)—that they were is-
sued to persons who had ostensibly served as jurors and wit-
nesses during the sittings of the district court of Silver Bow
county; that upon their face they stated the facts required to
be stated; and that the statements thus set forth were false,
in that the ostensible jurors and witnesses had in fact performed
no service whatever. The sections of the statutes cited do not
require the certificates to be addressed to the treasurer. His
duty in the premises requires him to pay upon their presenta-
tion. (Revised Codes, secs. 3179, 3183.) While it may be said
that the pleading is somewhat indefinite in its statements, and
may have been open to attack by special demurrer, yet, taken
as a whole, the only conclusion to be drawn from it is that Far-
rell, by issuing apparently genuine certificates to fictitious per-
sons, or persons who were not entitled to them, abused his posi-
tion to the injury of the county by causing a misappropriation
of its funds. The demurrer was properly overruled.

2. When the fraudulent conduct of Farrell was discovered
and brought to the attention of the authorities of Silver Bow
county, the county attorney charged him by information with
the forgery of two of the jurors' certificates involved herein,
and he was convicted and sentenced to terms of imprisonment.
Upon application to this court for *habeas corpus,* it appeared
from the copies of the certificates set forth in the informations
that in issuing the originals Farrell omitted to impress upon
them the seal of the court. This court held that such an instru-
ment has no apparent legal validity, and therefore that the false
and fraudulent making of it does not constitute forgery. Ac-
cordingly, it was held that the convictions were improper, and
that the complainant was entitled to be released from custody.
(*In re Farrell,* 36 Mont. 254, 92 Pac. 785.) It was pointed out

in the opinion in that case that such a certificate does not upon its face import a legal liability of the county, because the statute specifically directs it to be issued under the seal of the court, over the signature of the clerk by himself or his deputy (Political Code 1895, sec. 4645; Revised Codes, sec. 3179), and because the treasurer must "disburse the moneys of the county only on county warrants issued by the county clerk, based upon orders of the board of county commissioners, or as otherwise provided by law." (Political Code 1895, sec. 4350; Revised Codes, sec. 2986.) The phrase, "or as otherwise provided by law," it was pointed out, includes jurors' certificates, and the restriction as to the power of payment by the treasurer applies as well to them as to other claims against the county. If they do not bear upon their face the evidence of genuineness which the statute prescribes, to-wit, the signature of the clerk and the seal of the court, the treasurer has no authority to pay them. Referring to the respective duties of the treasurer and the clerk; with reference to them, this court said: "The treasurer cannot act until the clerk has performed his duty. The clerk must, therefore, perform his duty in the way prescribed. If the latter issues false certificates, he violates his duty. If the former pays upon any other demand than that prescribed, he does the like." The rule applicable to jurors' certificates applies also to witnesses' certificates. The clerk must observe the same formalities in issuing them. (Revised Codes, secs. 3154, 3183.)

The liability of defendants in this case is not, in our opinion, to be determined by the fact that in manufacturing and issuing the certificates Farrell was not technically guilty of the crime of forgery. Their liability turns upon an answer to the question: Did the issuance of the certificates, in the form in which they were issued and under color of office, operate as an effective cause of loss to the county? Under the statute, the condition of every official bond must be that the principal shall faithfully perform the official duties required of him by law as it exists at the time he enters upon his office, as well as those imposed by law subsequently enacted, and that he will account for and pay

or deliver to the person or officer entitled all moneys or other property coming into his hands by virtue of his office. "The principal and sureties upon any official bond are also in all cases liable for the neglect, default, or misconduct in office of any deputy, clerk or employee, appointed or employed by such principal." (Revised Codes, sec. 384.) By this latter provision the illegal act or official misconduct of the deputy is expressly put in the same category as the illegal act or misconduct of the principal. Therefore, while no liability could attach for any official act, whether illegal or not, which has not resulted in injury, the contract of the surety includes indemnity against loss or injury to the county or others caused by the wrongful acts of either. It was among the powers and duties of Davies and his deputies to issue certificates to the persons who had served as jurors and witnesses. Any abuse of this power resulting in loss was a lapse in the performance of duty, against which the surety agreed to indemnify the county.

Counsel for defendants contend that since the certificates were adjudged in the *Farrell Case* to be invalid, and for this reason that the treasurer could not lawfully pay them, the loss to the county was caused by his wrongful act, and hence that Davies and his surety may not be held responsible. The attorney general contends that the issuance of certificates to jurors and witnesses was one of the duties of the clerk; that it was his duty to see that they were issued only to persons entitled to them, and in the form prescribed; and that he and his surety are liable for the misconduct of Farrell, the deputy, in issuing them as he did, even though they were not in proper form and were paid by the treasurer. With this latter contention we agree. It was said by the supreme court of Mississippi in *Lewis* v. *State,* 65 Miss. 468, 4 South. 429: "It was among the powers and duties of Bracey as circuit clerk to issue, under certain conditions, certificates to witnesses, to be paid by the county; and if, in exercising this power or performing this duty, he acted wrongfully or violated his duty in any respect, so that the county, whose agent and servant he was in the matter, was thereby de-

frauded, it was a breach of his bond.    There is much refinement and quibbling in the books in behalf of sureties on official bonds who are held responsible for the misconduct of their principal as to whether the act of the officer was done *colore officii* or *virtute officii,* or whether it constitutes a misfeasance, malfeasance, or a nonfeasance.    While the liability of sureties is not to be extended beyond the terms of their engagement, the public is entitled to some consideration, as well as the voluntary sponsors of unfaithful public officers; and it must be true that, if an officer under bond to faithfully discharge the duties of his office does an act as such officer injurious to the county or to others in regard to a subject over which he has jurisdiction and control, his sureties cannot escape responsibility for the act, no matter by what technical name it may be called.''    We shall not stop to consider these technical distinctions.    A discussion of them, with citation of authorities, may be found in the note to *Feller* v. *Gates,* 91 Am. St. Rep. 492.

If Davies himself had issued the certificates, it could not be doubted that he would have done so in his official capacity; for he would not have so acted except for the purpose of obtaining money from the county treasurer.    Farrell was able to issue them only by virtue of the fact that his connection with the office as deputy furnished the opportunity.    He issued them for the purpose of misappropriating the funds of the county.    Under the provision of the statute *supra,* this was misconduct in office, for which his principal is liable.    The contract between the county and the surety imposes no obligation upon the county to stand as guarantor for the good conduct of its officers.    The surety of a delinquent officer may not, therefore, be heard to say that the county is estopped to assert his liability because of the misconduct or shortcomings of other officers, or because their misconduct in any way contributed directly to the loss, the cause of which was set in motion by the delinquent.    (*Jackson County* v. *Derrick,* 117 Ala. 348, 23 South. 193; *County of Waseca* v. *Sheehan et al.,* 42 Minn. 57, 43 N. W. 690, 5 L. R. A. 785; *Campbell* v. *People,* 154 Ill. 595, 39 N. E. 578; *Spindler*

v. *People,* 154 Ill. 637, 39 N. E. 580; *People* v. *Treadway,* 17 Mich. 480; *Mahaska County* v. *Ruan,* 45 Iowa, 328; *Marlar* v. *State,* 62 Miss. 677; *Cricket* v. *State,* 18 Ohio St. 9.)   In *County of Waseca* v. *Sheehan et al., supra,* it was said: "The official bond of the county treasurer is intended to secure the public from loss by reason of the official delinquency of that officer. For that purpose a bond is given.   For that purpose it is to be deemed to have been given.   The obligation of the sureties of the treasurer is such as is declared in the condition of the bond. It is not contingent upon the integrity of other public officers, nor upon the faithful performance by them of their official duties.   The sureties upon such a bond enjoy whatever protection there may be in the law imposing supervisory duties upon other public officers; but there is no undertaking or guaranty on the part of the county or of the state in favor of such sureties, either express or implied, that the requirements of the law shall be complied with, that public officers shall perform their prescribed duties, nor that they shall not be guilty of criminal misfeasance.   There is no such condition affecting the contract expressed in the bond."   The same conclusion is announced in *Hart* v. *United States,* 95 U. S. 316, 24 L. Ed. 479, as follows: "The government is not responsible for the laches or the wrongful acts of its officers.   \*   \*   \*   Every surety upon an official bond to the government is presumed to enter into his contract with a full knowledge of this principle of law, and to consent to be dealt with accordingly.   The government enters into no contract with him that its officers shall perform their duties.   A government may be a loser by the negligence of its officers, but it never becomes bound to others for the consequences of such neglect, unless it be by express agreement to that effect."

But counsel for the defendants argue that in going forward in the line of causation from the misuse of his official position by Farrell until the loss is reached, the first efficient proximate cause encountered is the unauthorized payment of the certificates by the treasurer, and hence that the treasurer alone, and

not the clerk, is liable.  They rely with confidence upon the case of *Oakland Bank of Savings* v. *Murfey*, 68 Cal. 455, 9 Pac. 843.  That case was an action to recover damages upon the bond of Murfey as notary public.  One Leroy went to the office of Murfey and falsely introduced himself as M. B. West, the owner of a certain piece of land, and requested Murfey to prepare a deed to it for him to one Henry Harmon.  This Murfey did. Thereupon Leroy signed the deed in the name of West, and in that name acknowledged it, Murfey attaching his certificate in the usual form, to the effect that he personally knew the grantor, and that such grantor had acknowledged before him that he had executed the deed.  Leroy then took the deed to the officers of plaintiff, to whom he was a stranger, and, representing himself as Harmon, procured from them a loan secured by a mortgage upon the property described in the deed.  The plaintiff made the loan without inquiry as to the identity of the supposed Harmon, and upon his representations that West. the owner, had made the deed to him.  The breach of the bond alleged as the ground of recovery was the false certificate of Murfey as to the personal identity of the grantor named in the deed.  Upon these facts, the court held that while Murfey was guilty of negligence, and was therefore accountable to anyone to whom his negligence proximately caused injury, he was not liable to the plaintiff, because the proximate cause of plaintiff's injury was its own negligence in failing to make inquiry as to the identity of Harmon.  The court said: "Plaintiff's negligence was the proximate cause of such injury; that is, it was in the order of causation next to and produced the result.  It must not be understood that the negligence of defendant was not one of the conditions of the injury to plaintiff; on the contrary, it constituted a condition in the order of causation, by which plaintiff's injury was brought about.  * * *  For remote or secondary causes men are not responsible.  '*Causa proxima, non remota, spectatur.*'  It may with propriety, we think, be said that plaintiff had a right to rest upon the presumption that a public officer who is shown to have performed an official act has

done so properly, but if the evidence stops short with showing that he was guilty of negligence, and fails to show that plaintiff was injured thereby, or if it proceeds further, and shows an injury sustained, but which was not the proximate result of such negligence, but was the natural and proximate outgrowth of some new and independent act or acts of negligence on the part of the plaintiff, there can be no recovery." The same principle was recognized and applied in *Hatton* v. *Holmes,* 97 Cal. 208, 31 Pac. 1131, and *Governor* v. *Wiley,* 14 Ala. 172. With the application of the principle invoked in these cases we find no fault. Indeed, we do not see that the courts in deciding them could have reached any other result. One who has been proximately the cause of loss or injury to himself cannot be heard to say that someone else should compensate him for his loss, even though such other person has brought about the condition, in the order of causation, which produced the injury. This is the rule declared by the statute. "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has willfully or by want of ordinary care brought the injury upon himself. * * * " (Revised Codes, sec. 5077.)

When we look for the direct and proximate cause of the loss suffered by plaintiff, no just conclusion can be reached other than that the deputy's conduct was, to say the least, one of the proximate causes of the loss, and not a mere condition. To be sure, the treasurer was guilty of gross negligence, without which the loss would not have occurred; but this did not excuse the clerk. If the certificates had been under seal and fair on the face, but forged by the clerk himself or one of his deputies there could be no question as to the liability of the clerk and his surety. Are they any less liable because the deputy adopted a different expedient, as he did in this case, and thus avoided criminal liability? The negligence of the treasurer and the misconduct of Farrell operated as concurrent causes. The principle applicable is that, where two causes operate concurrently to

produce an injury, both are to be deemed direct proximate causes, and liability attaches to all persons who had to do with putting either of the causes in motion. This is the principle upon which the court rested its decision in *Campbell* v. *People, supra.* Under the laws of Illinois, it was the duty of the county clerk to issue orders upon the treasurer for the amount of claims due to creditors of the county, and transmit them to the persons entitled to them, after the treasurer had by examination of the county records ascertained that they were authorized by the board of supervisors, and had countersigned them. The treasurer fell into the practice of paying these orders, without countersigning them. Sometimes the money was paid to the clerk, who transmitted it to the persons entitled to it, and sometimes to persons other than those named as payees. The clerk, taking advantage of this condition, issued orders to some persons in amounts in excess of those authorized by the board, and in other cases for amounts not authorized at all, and, having collected them from the treasurer, appropriated the proceeds in whole or in part to his own use. Contention was made on behalf of the sureties of the clerk that they were not liable because the loss was caused by the failure of the treasurer to perform his duty The court overruled the contention, saying: "The unlawful acts of Dunlap, under color and by virtue of his office as county clerk, in improperly and illegally issuing and delivering or retaining county orders, were the dominant and efficient causes for the losses that the county has sustained, although the loose and improper methods that prevailed as between him and the treasurer in transacting the business of the county without doubt afforded opportunity for the frauds that he committed; but, as already said, the fact that the treasurer was negligent and culpable did not excuse his malfeasance or release his sureties from liability therefor." The same contention was made in *People* v. *Treadway, supra.* In disposing of it the court said: "If the warrant in question was so suspicious on its face as to render the treasurer culpable for paying it, that does not lessen the fault of the clerk, or render his act any less official. It may

involve another party in fault, but it leaves his own act unchanged.''

If the certificates had been under seal, they would all have been forgeries, within the rule declared in the case of *In re Terrett,* 34 Mont. 325, 86 Pac. 266; but the fact that they were not forgeries does not destroy the legal significance of the fact that Farrell intended by the use of his official position to induce the treasurer to pay out the money of the county, either for his own use or for that of someone else—it makes no difference which—and that he did so. The prevalence of the custom and practice mentioned in the pleadings only emphasizes the justice of the conclusion which we have reached. If the method of conducting the business of the county alleged did prevail, it added nothing to the culpability of Farrell in committing the great number of frauds of which he was guilty. The fact of its existence only tends to show the ready opportunity he had to defraud the county by virtue of the trusted position which he held in the office of his principal. The question is put by counsel: How could Davies have protected himself from liability for such frauds? The answer is apparent. Under the statute, he was authorized to indemnify himself by requiring of Farrell an official bond. (Revised Codes, sec. 416.) If he failed or neglected to do this, neither he nor his surety may complain that they have suffered loss.

Though counsel do not refer to the subject in their briefs, it may be observed that by the admissions in the reply and the allegation of the custom and practice observed by the clerk and treasurer, by way of estoppel, there is presented an issue upon a matter of fact, which modifies and enlarges the cause of action stated in the complaint. Thus there is a distinct departure in the pleadings. (6 Ency. of Pl. & Pr. 461; Bliss on Code Pleading, sec. 396; Phillips on Code Pleading, sec. 273.) The court evidently regarded the complaint as aided by these admissions and allegation, and hence directed a verdict for the plaintiff. By failing to insist upon a reformation of the pleadings in the trial court the defendants waived the departure. (6 Ency. of

Pl. & Pr. 470; Bliss on Code Pleading, sec. 396; Phillips on Code Pleading, sec. 273.) In any event, no purpose could be subserved by a reversal of the judgment other than to have the trial court amend the complaint so as to conform to the proof; for upon the admitted facts there is a clear liability, and judgment for the county must follow as a matter of course.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

(Submitted January 21, 1910. Decided February 4, 1910.)